THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
AUG 2 5 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MARLITA THOMAS, as Mother, Next Friend, )
and Special Administrator of NORMAN L. )
SMITH, JR., deceased, )
)
      Plaintiff, )
)
      v. )    No. 04 C 3563
)
COOK COUNTY SHERIFF, COOK COUNTY )    Judge Castillo
DEPARTMENT OF CORRECTIONS, CERMAK )
HEALTH SERVICES OF COOK COUNTY, )    Mag. Judge Mason
COOK COUNTY BUREAU OF HEALTH )
SERVICES, COOK COUNTY, )
JOHN STROGER, JR., MICHAEL F. SHEAHAN, )
DR. JOHN RABA, RUTH M. ROTHSTEIN, )
CALLIE BAIRD, DANIEL BROWN, )
SGT. MONCZYNSKI, Star 831, OFFICER )
SANCHEZ, Star 8131, OFFICER JOHLER, )
OFFICER ACEY, OFFICER MERRIWEATHER, )
JAMES MYVETTE, MS. WESTBROOK, and )
UNKNOWN COOK COUNTY CORRECTIONAL )
OFFICERS AND CERMAK HEALTH )
SERVICES EMPLOYEES, )
)
      Defendants. )

DOCKETED
AUG 2 7 2004

## NOTICE OF FILING

TO:   Paul O'Grady
       Chief Counsel, Cook County Sheriff
       50 West Washington St., Suite 704
       Chicago, IL 60602

PLEASE TAKE NOTICE that on August 25, 2004, pursuant to prior Court Order, we

filed with the Clerk of the District Court Plaintiff's First Amended Complaint, a copy of which is

1

3

hereby served upon you.

By: _____
One of plaintiff's attorneys

Daniel S. Alexander
119 North Peoria Street, Suite 3A
Chicago, Illinois 60607
312-850-2600

## Certificate of Service

The undersigned attorney hereby certifies that he served this Notice and the referenced pleading to the attorney listed in the above Notice of Filing by first class mail deposited at Chicago, IL on August 25, 2004, prior to 5:00 p.m.

_____
Daniel S. Alexander

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
AUG 2 5 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| MARLITA THOMAS, as Mother, Next Friend, and Special Administrator of NORMAN L. SMITH, JR., deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 04 C 3563<br>) |
| COOK COUNTY SHERIFF, COOK COUNTY DEPARTMENT OF CORRECTIONS, CERMAK HEALTH SERVICES OF COOK COUNTY, COOK COUNTY BUREAU OF HEALTH SERVICES, COOK COUNTY, JOHN STROGER, JR., MICHAEL F. SHEAHAN, DR. JOHN RABA, RUTH M. ROTHSTEIN, CALLIE BAIRD, DANIEL BROWN, SGT. MONCZYNSKI, Star 831, OFFICER SANCHEZ, Star 8131, OFFICER JOHLER, OFFICER ACEY, OFFICER MERRIWEATHER, JAMES MYVETTE, MS. WESTBROOK, and UNKNOWN COOK COUNTY CORRECTIONAL OFFICERS AND CERMAK HEALTH SERVICES EMPLOYEES, | ) Judge Castillo<br>)<br>) Mag. Judge Mason<br>)<br>)<br>)<br>) DOCKETED<br>)<br>) AUG 2 7 2004<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) JURY DEMANDED |

## FIRST AMENDED COMPLAINT

NOW COMES the plaintiff, MARLITA THOMAS, as Mother, Next Friend, and Special Administrator of NORMAN L. SMITH, JR., deceased, by her attorneys, ALEXANDER & ASSOCIATES, LTD., and THE LAW OFFICES OF SMITH AND COFFEY, LTD., and complaining of the defendants, COOK COUNTY SHERIFF, COOK COUNTY DEPARTMENT OF CORRECTIONS, CERMAK HEALTH SERVICES OF COOK COUNTY, COOK

1

3

COUNTY BUREAU OF HEALTH SERVICES, COOK COUNTY, JOHN STROGER, JR., MICHAEL F. SHEAHAN, DR. JOHN RABA, RUTH M. ROTHSTEIN, CALLIE BAIRD, DANIEL BROWN, SGT. MONCZYNSKI, OFFICER SANCHEZ, OFFICER JOHLER, OFFICER ACEY OFFICER MERRIWEATHER, JAMES MYVETTE, MS. WESTBROOK, and UNKNOWN COOK COUNTY CORRECTIONAL OFFICERS AND CERMAK HEALTH SERVICES EMPLOYEES, states as follows:

**INTRODUCTION**

1. This is a civil action seeking damages for depriving plaintiff's deceased, while acting under color of law as Cook County Sheriff and Correctional Officers and Cook County Jail health officials, of rights secured by the Constitution and laws of the United States, including the rights secured by the 8th Amendment to the Constitution, and for related State-law claims, including Wrongful Death.

**JURISDICTION**

2. This action is brought pursuant to 42 U.S.C. sec. 1983, and the Eighth Amendment to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. Sections 1331 and 1341(3) and (4) and 1343, and the aforementioned constitutional and statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to Section 1367 to hear and decide claims arising out of state law.

**PARTIES**

3. Plaintiff is a citizen of the United States, who currently resides in Lansing, Illinois.

4. Defendants Cook County Sheriff and Cook County Department of Corrections run the Cook County Jail and are the employers of the correctional officers sued herein. Cermak Health

Services of Cook County runs the health service for detainees at Cook County Jail. Cook County Bureau of Health Services has overall responsibility for the provision of health services at Cook County Jail. Cook County is a duly incorporated governmental entity in Illinois, and has overall authority over the above institutions, and is liable for any judgments related to its agents and employees arising in the course of their employment, pursuant to 745 ILCS 10/2-302. All of these institutions may be referred to collectively as the "institutional defendants."

5. John Stroger, Jr. is the President of the Cook County Board. Michael F. Sheahan is the Cook County Sheriff. Dr. John Raba is the Chief of Cermak Health Services. Ruth M. Rothstein is the Chief of the Cook County Bureau of Health Services, Callie Baird is the Executive Director of the Cook County Department of Corrections. Daniel Brown is the Superintendent of Division 5 of the Cook County Jail. The following parties were, during the events complained of, correctional officers at Division 5 of the Cook County Jail: Sgt. Monczynski, Officer Sanchez, Officer Johler, Officer Acey, Officer Merriweather, and Unknown Cook County Correctional Officers. James Myvette was a paramedic at Cermak Health Services. Ms. Westbrook was a nurse assistant at Cermak Health Services. Plaintiff also sues unknown Cermak Health Services employees. All of the above individuals may be referred to collectively as the "individual defendants." They are all sued in their individual capacities.

6. At all times relevant hereto, the individual defendants were acting under color of the statutes, ordinances, regulations, customs and usages of the State of Illinois, Cook County, and the Cook County Sheriff's Department, and within the scope of their employment with defendant institutions.

## FACTS

7. On Friday, April 23, 2004, Norman L. Smith, Jr., age 32, ("Norman") was sitting on a friend's porch in Chicago, Illinois, committing no crimes and possessing no contraband. Two Chicago Police officers, from the same area as two police officers that Norman had recently filed an OPS complaint against, approached him, searched him, found no contraband, then arrested him for possession of a controlled substance.

8. Norman, who enjoyed good health for most of his life, had been suffering from what seemed like flu symptoms at the time of his arrest. The arresting officers transported Norman to Cook County Jail, where he was screened by Cermak Health Services. Norman complained to the medical personnel at Cermak about his physical condition at the screening, but he was cleared for general prison population.

9. By Monday, April 26, 2004, Norman's physical condition had deteriorated, and he began making requests of various Cook County Sheriff Officers, including defendant correctional officers, to be seen by a doctor or to be taken to Cermak Health Center. These deputies refused Norman's repeated requests for medical attention, stating that Norman, who did not use drugs, was only "dopesick."

10. Norman's condition continued deteriorating each day. He was obviously in serious need of medical attention. He was vomiting green liquid repeatedly and could not eat at all. He continued making repeated requests of the sheriff officers, including defendant officers, each day to be seen by a doctor, pleading with them that felt like he was going to die soon. The officers continued to deny his requests, and they sometimes refused to allow him to make written requests for medical attention. Norman also made a request for medical attention to Cermak

4

nurse Ms. Westbrook, but she also refused his request.

11. As Norman's health continued to deteriorate, he was not able to move and was forced to lie on the concrete floor in his own vomit. Several of Norman's tiermates made repeated requests over several days to sheriff's officers and Cermak nurses for medical attention, all of which were refused. When the tiermates repeated requests were ignored, the tiermates began begging the officers to get Norman medical attention, explaining that Norman could not still be "dopesick" after several days, and that he was dying. All requests were denied, and all the tiermates could do was gather around Norman and pray for him as he neared death.

11. Finally, on Thursday, April 29, 2004, with Norman near death, a correctional officer allowed Norman or one of Norman's tiermates to make a written request for medical attention to Cermak Health Services. This request was ignored and no medical attention or treatment was provided to Norman.

12. On April 30, 2004, one of Norman's tiermates awoke at 4:00 a.m. to help with breakfast. He saw that Norman was lying on the floor of his cell, having convulsions. The tiermate immediately told a sheriff's deputy, defendant Officer A. Sanchez, Star 8131, of Norman's condition. The officer alerted the Sargent on duty, defendant Sargent Monczynski, Star 831, of Norman's condition.

13. Sargent Monczynski did not come to the cell to check on Norman for one half hour. After finally observing Norman's condition, the Sargent called a Cermak Hospital paramedic.

14. It took one half hour for the Cermak paramedic, defendant J. Myvette, to arrive, although Cermak is in the next building and connected by a courtyard. Paramedic Myvette had

5

no assistants and no medical equipment. He checked Norman's pulse and then casually walked to the tier office to get Norman's I.D., taking the I.D. of another prisoner by mistake.

15. Paramedic Myvette spent one half hour in the tier office trying to get the proper I.D. for Norman, while Norman's tiermates were yelling at Myvette "this man's real sick in here, he needs help." The paramedic responded "he's going to have to wait." The paramedic finally got the I.D. mixup straightened out and called for more paramedics from Cermak.

16. By the time the additional Cermak paramedics arrived, Norman was barely breathing, with one eye shut and one eye open with his eye rolled up in the back of his head. The paramedics brought a Gurney on wheels, but stopped about one hundred feet short of Norman because there was a set of stairs to get down to the tier level. The paramedics then simply stood there at the top of the stairs not moving, and Norman's tiermates asked them why they were not helping Norman. They responded that they did not have the manpower to lift Norman up the steps, so there was nothing they could do. Upon hearing this, three of Norman's tiermates went and carefully lifted Norman and carried him up the steps to the Gurney. The tiermates then watched the paramedics slowly wheel Norman out of the tier, and the tiermates could observe no attempt at CPR or other treatment.

17. Norman died shortly later that morning of meningitis, a condition which would have been readily treatable had he been afforded reasonable medical treatment.

18. The failure of the defendants to provide access to medical care for Norman constituted complete, deliberate, wilful and wanton, and criminal indifference to Norman's serious medical needs.

19. As a direct and proximate result of the defendants' wilful and wanton indifference

to Norman's serious medical needs, Norman was caused to suffer great pain, mental anguish, and death.

20. Following Norman's death and the postmortem finding that Norman died from meningitis, several of the defendants conspired and agreed among themselves to destroy evidence and cover up the criminal neglect that caused Norman's death. As part of this conspiracy, defendant Callie Baird personally visited Norman's tier to talk to detainees there. When Norman's tiermates explained how they and Norman had made repeated requests for medical assistance, she told the detainees that "no requests were ever made." As part of the cover up conspiracy, unknown employees of the institutional defendants destroyed documents, including medical request forms sent by Norman and his tiermates. As part of the coverup conspiracy, some of the individual defendants made false reports regarding the incident.

## Count I

### Section 1983 and Eighth Amendment Claim

1-20. Paragraphs 1-20 above are re-alleged here as if fully set forth.

21. The actions of the defendants, described above, constituted deliberate indifference to Norman's serious medical needs, thus violating the Eighth Amendment to the United States Constitution.

22. As a direct and proximate result of this Constitutional violation, Norman was caused to suffer great pain, mental anguish, and death.

WHEREFORE, plaintiff Marlita Thomas demands judgment against the individual defendants, jointly and severally, for compensatory damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000.00) and further demands judgment against the individual

defendants, jointly and severally, for punitive damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000.00), plus attorney's fees pursuant to statute and the costs of this action, and such other and further relief as this Court deems just, proper, and equitable.

## Count II

### 1983 Action (Monell Claim) Against Institutions for Failure to Properly Instruct, Supervise, and Provide Adequate Health Care

1-22. Paragraphs 1-22 above are realleged here as if fully set forth herein.

23. The Constitutional violations detailed in Count I above were only possible for the individual defendants to perpetrate because of the customs, policies, and practices of the institutional defendants, whereby the institutions charged with ensuring adequate health care to pre-trial detainees at Cook County Jail failed utterly to provide the most basic health care commensurate with a civilized society.

24. These failures include (1) fostering an atmosphere at the Cook County Jail where correctional and medical personnel were encouraged to disregard serious medical needs of detainees; and (2) knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable time frame, by (a) failing to provide any medical services in the night hours, (b) failing to have an adequate plan to respond to emergency medical needs, including a plan to move prisoners up stairways, (c) failing to have a reasonably equipped or staffed emergency medical response team, (d) failing to have a system in place so that medical requests of detainees are reviewed promptly by properly trained medical staff and acted upon in a reasonable manner; and (3) failing to have an adequate assessment of incoming detainee's health situation by qualified physicians; and (4) encouraging the destruction of documents and false writing of reports to cover up inadequacies in the medical care of detainees, thus

maintaining an atmosphere and climate where inmates' serious medical needs are ignored and Constitutional violations are not prosecuted or punished.

WHERFORE, plaintiff Marlita Thomas demands judgment against the institutional defendants, jointly and severally, for compensatory damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000.00) and further demands judgment against the institutional defendants, jointly and severally, for punitive damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000.00), plus attorney's fees pursuant to statute and the costs of this action, and such other and further relief as this Court deems just, proper, and equitable.

## Count III

### Wrongful Death Pursuant State Law Against Individuals and Institutions

1-20.   Paragraphs 1-20 above are realleged here as if fully set forth.

21.   Decedent Norman L. Smith, Jr. at all times relevant to this Complaint exercised due care for his own safety.

22.   At the time and place aforesaid, the individual defendants and the institutional defendants, acting by and through their duly authorized agents and/or employees, owed decedent the duty to refrain from wilful and wanton acts or omissions which could cause suffering or death to the decedent.

23.   As detailed above, the defendants breached this duty by wilfully and wantonly committing one, more, or all of the following acts or omissions:

(a)   Deliberately ignoring the serious medical needs of the decedent;

(b)   Failing to properly diagnose decedent's condition;

(c)   Refusing to allow the decedent to make written requests for medical

treatment;

(d) Refusing decedent's verbal and written requests for medical attention;

(e) Failing to provide timely and/or proper medical treatment for a serious condition of which they were aware;

(f) Otherwise acting wilfully and wantonly toward decedent, in total and criminal disregard to his medical needs.

24. As a direct and proximate result of one or more of the foregoing wilful and wanton acts and/or omissions of the individual defendants, the decedent was caused to die on April 30, 2004.

25. The institutional defendants are sued in this count pursuant to the doctrine of respondeat superior, in that the individual defendants performed the actions complained of while on duty and in the employ of defendant institutions, and while acting within the scope of this employment.

26. The decedent left surviving him his three minor children, Da'Quan Magsby, Amber Smith, and Kailah Smith, his mother, Marlita Thomas, and various siblings.

27. By reason of the death of decedent, decedent's children and other relations have been deprived of the support, comfort, protection, and society of the decedent.

WHEREFORE, plaintiff Marlita Thomas demands judgment against all defendants, jointly and severally, for compensatory damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000.00) and further demands judgment against the individual defendants, jointly and severally, for punitive damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000.00), plus attorney's fees pursuant to statute and the costs of this action,

and such other and further relief as this Court deems just, proper, and equitable.

## Count IV

## Survival Action

1-27. Paragraphs 1-27 above are realleged as if fully stated here.

28. Plaintiff's decedent survived for approximately one week during his sickness, prior to his death.

29. During this period, Norman Smith was conscious, and he suffered great pain and agony prior to his death, proximately caused by the above-stated acts and/or omissions of the defendants.

WHEREFORE, plaintiff Marlita Thomas demands judgment against all defendants, jointly and severally, for compensatory damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000.00) and further demands judgment against the individual defendants, jointly and severally, for punitive damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000.00), plus attorney's fees pursuant to statute and the costs of this action, and such other and further relief as this Court deems just, proper, and equitable.

## Count V

## Intentional Infliction of Emotional Distress Against Individuals and Institutions

1-20. Paragraphs 1 through 20 above are realleged here as if fully set forth herein.

21. The above-detailed conduct by the defendants was extreme and outrageous, exceeding all bounds of human decency.

22. Defendants performed the acts detailed above with the intent of inflicting severe emotional distress or with knowledge of the high probability that the conduct would cause such

distress.

23. As a direct and proximate result of this conduct, plaintiff did in fact suffer severe emotional distress, resulting in injury to his mind, body, and nervous system, including loss of sleep, mental anguish, nightmares, and excruciating physical pain.

WHEREFORE, plaintiff Marlita Thomas demands judgment against all defendants, jointly and severally, for compensatory damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000.00) and further demands judgment against the individual defendants, jointly and severally, for punitive damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000.00), plus attorney's fees pursuant to statute and the costs of this action, and such other and further relief as this Court deems just, proper, and equitable.

## Count VI

### Reimbursement Claim Against County Pursuant to 745 ILCS 10/2-302

In the event any individual defendants are found liable for their actions performed in the course of their employment, Cook County, Illinois must indemnify the employee for this verdict pursuant to 745 ILCS 10/2-302.

WHEREFORE, plaintiff Marlita Thomas demands that Cook County, Illinois pay any compensatory judgments against individual defendants who acted in the course of their employment.

Respectfully submitted,

MARLITA THOMAS

By: _____
One of her attorneys

Daniel S. Alexander
DANIEL ALEXANDER & ASSOCIATES, LTD.
119 North Peoria Street
Suite 3A
Chicago, Illinois 60607
312-850-2600

Phillip L. Coffey
Christopher R. Smith
LAW OFFICES OF SMITH AND COFFEY, LTD.
119 North Peoria Street, Suite 3A
Chicago, Illinois 60607
312-850-2600