UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARLITA THOMAS, as Mother, Next )
Friend, and Special Administrator of )
NORMAN L. SMITH, JR., deceased, )
)
)
Plaintiffs, )
)
v. ) No. 04 C 3563
)
COOK COUNTY SHERIFF, COOK ) Judge Ruben Castillo
COUNTY BUREAU HEALTH SERVICES )
COOK COUNTY, JOHN STROGER, JR. )
MICHAEL F. SHEAHAN, DR. JOHN )
RABA, RUTH M. ROTHSTEIN, CALLIE )
BAIRD, DANIEL BROWN, SGT. )
MONCZYNSKI, OFR. SANCHEZ, JAMES )
MYVETTE, PEGGY WESTBROOK, A. )
BRADLEY, OFR. DAVIS, SGT. DEW, OFR.)
FACUNDO, SGT. HERNANDEZ, OFR. )
HOUSTON, OFR. JOHNSON, LT. )
KRZYZOWSKI, C. LACY, T. NELSON, R. )
PATTON, SGT. STRONER, OFR. )
THIEMECKE, OFR. TOOMEY, and )
K. WEST, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

This case arises out of the tragic death of Norman L. Smith, Jr., ("Smith") while he was in the custody of the Cook County Department of Corrections. Plaintiff Marlita E. Thomas ("Thomas"), as Smith's mother and the independent administrator of his estate, brings suit under 42 U.S.C. § 1983; the Illinois Wrongful Death Act, 740 ILCS 180/1 (2005); the Illinois Survival Act, 755 ILCS 5/27-6 (2005); and Illinois common law. Thomas claims that Smith suffered physical pain, mental anguish, and death as a result of the defendants' deliberate indifference to

Smith's medical needs.

Eleven of the named defendants have joined in three separate motions to dismiss Thomas' Third Amended Complaint ("Complaint"). Defendants Callie Baird, Daniel Brown, James Monczynski, Darrell Merriweather, Alex Sanchez, and Michael Sheahan, the Sheriff of Cook County (the "Baird Defendants") brought one motion (R. 43-1); Cook County, Dr. John Raba, and Ruth M. Rothstein (the "Raba Defendants") brought a second motion (R. 44-1); and James Myvette and Peggy Westbrook (the "Myvette Defendants") brought the third motion (R. 46-1).[1] These defendants moved to dismiss Thomas' Complaint for lack of standing, pursuant to Federal Rule of Civil Procedure 12(b)(1),[2] and for failure to state a claim upon which relief can be granted, under Rule 12(b)(6). For the reasons set forth below, the Court grants in part and denies in part these motions.

---

[1] Thomas also names the following individuals and entity in her Complaint, but they are not proper parties in this case: Cook County Bureau of Health Services; John Stroger, Jr.; Officers Davis, Toomey, Johnson, Thiemecke, Houston, and Facundo; Sergeants Hernandez, Dew, and Stroner; Lieutenant Krzyzowski; C. Lacy; R. Patton; A. Bradley; T. Nelson; and K. West. The Cook County Bureau of Health Services, however, cannot be sued. *See Payne v. Cook County Hospital,* 719 F. Supp. 730, 733-34 (N.D. Ill. 1989) (holding that entities that have no legal existence outside of the County of Cook cannot be sued). In addition, the remaining individuals are not proper parties to this case because they were not served with the instant Complaint.

[2] Although the defendants challenge Thomas' standing under Rule 12(b)(6), their challenge would have been more appropriately brought as a 12(b)(1) motion, based on lack of subject matter jurisdiction. *Villareal v. Snow,* No. 95 C 2484, 1996 WL 28282, *1 (N.D. Ill. Jan. 19, 1996) (motion to dismiss based on plaintiff's alleged lack of standing would have been more appropriately brought as a 12(b)(1) motion, rather than a 12(b)(6) motion); *see also Gervasio v. United States,* 627 F. Supp. 428 (N.D. Ill. 1986) (motion to dismiss predicated on alleged failure to meet jurisdictional prerequisites was treated as a motion under Rule 12(b)(1) rather than under Rule 12(b)(6)). Accordingly, the Court will consider defendants' challenge of Thomas' standing under Rule 12(b)(1).

## FACTS[3]

On Friday, April 23, 2004, Smith was arrested by two Chicago police officers for possession of a controlled substance and transported to Cook County Jail. (R. 38, Compl. ¶¶ 8-9.) At the time of his arrest, Smith was suffering from flu-like symptoms. (*Id.* ¶ 9.) Although he complained of these symptoms to medical personnel during his initial screening at the jail by Cermak Health Services, he was placed with the general prison population in Division 5, Tier 1-M. (*Id.* ¶¶ 3, 9.)

By April 26, 2004, Smith's physical condition had deteriorated, and he began requesting medical attention from various Cook County sheriff officers. (*Id.* ¶ 10.) These officers denied all of Smith's requests for help, stating that he was merely "dopesick." (*Id.*) By the next morning, April 27, 2004, his condition had deteriorated severely. (*Id.* ¶ 11.) Smith was vomiting green liquid repeatedly and could not eat. (*Id.*). Between April 27 and April 29, 2004, Smith and his fellow detainees repeatedly requested that Smith receive medical attention from various sheriff officers and medical technicians. (*Id.* ¶¶ 11, 25.) Specifically, Smith told various sheriff officers that he wanted to be seen by a doctor or taken to Cermak Health Center (*Id.* ¶ 10), and that he "felt like he was going to die soon." (*Id.* ¶ 11.) On April 29, 2004, one of Smith's tier-mates made a written request for Smith's medical attention, explaining that Smith was having chest pains, fever, and vomiting, and that he had been ill for two weeks. (*Id.* ¶ 26.) These requests were rejected. (*Id.* ¶¶ 26-27.)

At 4 a.m. on April 30, 2004, one of Smith's tier-mates awoke to find him lying on the

---

[3]The facts recited here are taken from the plaintiff's well-pleaded allegations, which the Court must take as true for purposes of these motions to dismiss. *Dawson v. Newman*, 419 F.3d 656, 658 (7th Cir. 2005).

floor of his cell, having convulsions. (*Id.* ¶ 27.) This tier-mate immediately told Officer Sanchez of Smith's condition, who then informed Sergeant Monczynski. (*Id.*) A half-hour later, Sergeant Monczynski checked on Smith's condition and then called Cermak paramedic Myvette, who arrived at the scene an additional half-hour later without assistants or medical equipment. (*Id.* ¶¶ 28-29.) After checking Smith's pulse, Myvette walked to the tier office to retrieve Smith's identification. (*Id.* ¶ 30.) Myvette spent a half-hour trying to locate Smith's I.D. (*Id.*) After finding Smith's I.D., Myvette called for more paramedics from Cermak. (*Id.*) The additional paramedics arrived on the scene, wheeled a gurney to a staircase about one hundred feet away from Smith, and stopped. (*Id.* ¶ 31.) By this time, Smith was barely breathing, and one of his eyes was shut while the other was rolled back into his head. (*Id.*) The paramedics claimed that they lacked the manpower to lift Smith up the stairs and that there was nothing they could do, so Smith's tier-mates picked him up and carried him up the stairs to the gurney. (*Id.* ¶ 31.) Smith died of meningitis later that morning. (*Id.* ¶ 32.) He is survived by his three minor children and estranged wife. (Pl.'s *Russ v. Watts* Mem. at 2.)

In the Complaint, Thomas separates the named defendants into three groups based on the capacity in which they are being sued: institutional,[4] official,[5] and individual.[6] (Compl. ¶¶ 4-6.)

---

[4] The named institutional defendants are the Sheriff of Cook County and the County of Cook. (R. 38, Third Am. Compl. ¶ 4).

[5] The named official defendants are: Michael F. Sheahan, Cook County Sheriff; Dr. John Raba, Chief of Cermak Health Services; Ruth M. Rothstein, Chief of the Cook County Bureau of Health Services; Callie Baird, Executive Director of the Cook County Department of Corrections; and Daniel Brown, Superintendent of the Cook County Jail, Division Five. (*Id.* ¶ 5).

[6] The named individual defendants are Sargent James Monczynski, Officer Alex Sanchez, James Myvette, and Peggy Westbrook. (*Id.* ¶ 6).

4

In Count II, she alleges that the customs, policies and practices of the institutional defendants violated Smith's constitutional rights. (*Id.* ¶ 38.) Thomas claims that those customs, policies, and practices were promulgated, enforced, and disseminated by the official defendants. (*Id.*) Thomas alleges that these customs, policies, and practices prevented Smith and "many other" pre-trial detainees from receiving adequate medical care, resulting in "at least one other prior recent case of a pre-trial detainee being allowed to slowly die from meningitis while being denied any access to medical care." (*Id.*) Thomas further alleges that the individual defendants deliberately, wilfully, and wantonly ignored Smith's obvious and serious medical needs at the substantial risk of his serious injury and death, which constituted deliberate indifference to his serious medical needs. (*Id.* ¶ 36.)

## LEGAL STANDARDS

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the Court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor. *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001); *Mosley v. Kinclar*, 947 F.2d 1338, 1339 (7th Cir. 1991). The Court will grant a motion to dismiss only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003), *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## ANALYSIS

### I. Standing

The defendants challenge Thomas' standing under both Section 1983 and the Illinois

Wrongful Death Act. The defendants argue that only Smith's minor children have standing to bring these claims. However, the Illinois Wrongful Death Act grants a decedent's personal representative standing to sue on behalf of the decedent's surviving spouse and next of kin to recover for pecuniary losses they sustained due to the decedent's death. 740 ILCS 180/2 (2005). *See Glenn v. Johnson*, 198 Ill. 2d 575, 582, 764 N.E.2d 47, 52 (2002); *Elliott v. Willis*, 92 Ill. 2d 530, 540, 442 N.E.2d 163, 168 (1982). In the instant case, Thomas has been appointed by the Circuit Court of Cook County as the independent administrator of Smith's estate.[7] (R. 61, Raba Defs.' *Russ v. Watts* Mem., Ex. B.) Although the Illinois Wrongful Death Act does not specify who qualifies as a "personal representative" for purposes of the Act, Illinois law shows that an individual who has been appointed as the decedent's estate administrator so qualifies. *See Glenn*, 198 Ill. 2d at 582, 764 N.E.2d at 52. Thus, Thomas has standing under this Act.

By contrast, Section 1983 does not expressly indicate who has standing to bring survival civil rights actions. In such cases where federal law does not address a particular concern, Section 1988 provides that the analogous state law be applied. *Robertson v. Wegmann*, 436 U.S. 584, 588-94, (1978). Because Illinois law gives standing to a decedent's personal representative to sue for wrongful death on behalf of the decedent's surviving spouse and next of kin, Thomas may also bring a wrongful death claim under Section 1983 for the benefit of her deceased son's surviving spouse and children. *See Spence v. Staras, et al.*, 507 F.2d 554, 557 (7th Cir. 1974) (§ 1983 action survives for benefit of decedent's estate if the applicable state law creates a such a

---

[7] Contrary to defendants' protestations, Thomas has adequately pleaded that she was the independent administrator of her son's estate, despite the omission of "Jr." after her son's name, Norman L. Smith on the Cook County order. Thomas attached her petition for letters of administration to the Complaint, which letters identify the deceased as her son, who died on April 30, 2004.

6

survival action). *See also Benton v. Bocian*, No. 86 C 5367, 1987 WL 11345, *4-5 (N.D. Ill. May 14, 1987) (plaintiff had § 1983 standing by virtue of standing under either Illinois Wrongful Death or Survival Acts).

The Seventh Circuit did not make a contrary ruling in *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). In that case, the Seventh Circuit held that parents have no constitutional right to recover for their own loss of society and companionship under Section 1983, when the state's action did not purposefully interfere in the family relationship. *Id.* at 790-91. The Appellate Court did not foreclose a parents' right to maintain a wrongful death claim under Section 1983 for the benefit of the decedent's surviving spouse and next of kin. Therefore, in the instant case, since Thomas has standing under the Wrongful Death Act, she has standing to maintain the Section 1983 action.[8]

## II. Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he or she was (1) deprived of a federal right, privilege, or immunity (2) by any person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 638 (1980). Thomas alleges that Smith was deprived of his constitutional right to medical care as a pre-trial detainee in Cook County Jail. Because the Eighth Amendment does not apply to pre-trial detainees, this right derives from the Fourteenth Amendment's Due Process Clause. *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 259 n.1 (7th Cir. 1996) (citations omitted). However, since "the due process rights of a pre-trial detainee

---

[8]Thomas also has standing to bring a § 1983 claim by virtue of her standing under the Illinois Survival Act. *Wilmere v. Stibolt*, 504 N.E.2d 916, 918 (Ill. App. Ct. 1987) (holding that the administrator of a decedent's estate has standing to maintain an action on behalf of the decedent under the Illinois Survival Act.)

7

are at least as great as the Eighth Amendment protection available to a convicted prisoner," there is "little practical difference between the two standards." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005) (citations omitted). Therefore, Section 1983 claims brought under the Fourteenth Amendment are analyzed under Eighth Amendment tests. *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999).

### A. Individual Capacity Claims

In Count I of the Complaint, Thomas alleges that the individual defendants violated Smith's Eighth and Fourteenth Amendment constitutional rights by their deliberate indifference to his serious medical needs. (Compl. ¶ 36). In order to sufficiently allege an individual capacity claim under the Eight Amendment, a plaintiff must satisfy both an objective and a subjective requirement. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the "deprivation alleged must be, objectively, sufficiently serious." *Id.* (internal citations omitted). This means the custodial officials must expose a detainee to "conditions posing a substantial risk of serious harm." *Id.* The subjective requirement is that "[a] prison official must have a sufficiently culpable state of mind," which the Seventh Circuit has defined as "deliberate indifference." *Id.* (internal citations omitted.)

To survive a motion to dismiss, a plaintiff need only plead a sufficiently serious deprivation and the legal conclusion that the defendant acted with the requisite mental state. *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1995) (deliberate indifference sufficiently pled where plaintiff's complaint alleged that "the actions [of the defendants] were deliberate and intentional and were done with malice toward plaintiff" and that "said actions were done with reckless disregard for the rights of plaintiff...."); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir.

8

1995) (plaintiff's allegations were sufficient to withstand a 12(b)(6) motion where she alleged that defendant was "deliberately indifferent" and showed "deliberate or reckless disregard" for her rights.) Thomas has sufficiently met *Farmer*'s two-pronged test by alleging that each individual defendant was aware of Smith's serious medical needs and displayed deliberate indifference to them by failing to take adequate steps to protect him. (Compl. ¶¶ 18, 23, 24, 33, 36).

### B. Official Capacity (*Monell*) Claims

A municipality is liable under Section 1983 when a municipal policy or custom deprives someone of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Such liability may be demonstrated in three ways: "(1) by an express policy that, when enforced, causes a constitutional deprivation; (2) by a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law;[9] or (3) by a showing that the constitutional injury was caused by a person with final policymaking authority." *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) (internal citations and quotations omitted).

In Count II, Thomas alleges that Smith's constitutional violations were caused by:

> the customs, policies, and practices of the institutional defendants, as

---

[9]In order to sufficiently allege that the policy or custom has the force of law, a plaintiff must allege that municipal policymakers were "deliberately indifferent as to [its] known or obvious consequences." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 406-07 (1997) (quotations omitted). The Supreme Court has defined deliberate indifference in this context to mean that "a reasonable policymaker [would] conclude that the plainly obvious consequences" of the City's actions would result in the deprivation of a federally protected right. *Id.* at 411; *see also Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir. 2000) (finding that deliberate indifference requires a showing that policymakers "were aware of a substantial risk" of a constitutional violation and "failed to take appropriate steps to protect [plaintiffs] from a known danger.")

9

promulgated, enforced, and disseminated by the official defendants, whereby the institutions and official defendants charged with ensuring adequate health care to pre-trial detainees at Cook County Jail failed utterly to provide access to the most basic health care commensurate with a civilized society, in this case and many other cases, including at least one other prior recent case of a pretrial detainee being allowed to slowly die from meningitis while being denied any access to medical care.

(Compl. ¶ 38.) She also alleges a list of failures that she claims are representative of this policy. (Id. ¶ 39.) As such, Thomas has sufficiently alleged that the official and institutional defendants had either an express policy or widespread practice that deprived Smith of his constitutional rights. However, Thomas' claim that the official capacity and institutional defendants are "jointly and severally" liable under *Monell* is redundant. Claims brought against defendants in their official capacity are essentially brought against the government entity for which those officers work, and any damages received must be paid by the government entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Hadi v. Horn*, 830 F.2d 779, 783 (7th Cir. 1987). Thus, Count II is dismissed only to the extent that it alleges that the official capacity defendants are liable separately from the institutional defendants.[10]

### C. Conspiracy

The moving defendants next argue that the Court should dismiss Thomas' claims to the extent that they are based on the theory that the defendants conspired to cover up the "criminal neglect" that led to Smith's death. Thomas does not bring an actual conspiracy claim in her Third Amended Complaint, but she claims that a conspiracy claim may exist under her Section 1983 and state law claims. In order for a § 1983 claim of conspiracy to survive, "a plaintiff must

---

[10]The parties do not dispute that punitive damages are not available based on claims against parties in their official capacities.

allege that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (internal citations omitted). The "complaint must contain more than mere conclusory allegations of such a conspiracy; a factual basis for such allegations must be provided." *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir. 1992) (internal citations omitted). Under both federal and state law, an allegation of conspiracy, by definition, must allege an agreement or understanding among the defendants. Thomas, however, fails to allege any agreement or understanding among the defendants to cover up their actions. Thus her claims of conspiracy are, at best, conclusory in nature, and Thomas does not state a claim for conspiracy.

## III. State Claims

Thomas also alleges that the defendants' actions violate the Illinois Wrongful Death Act and create liability under the Illinois Survival Act. The defendants move to dismiss these claims under the Illinois Tort Immunity Act, arguing that this statute shields them from liability. They also argue that the Wrongful Death Act claims should be dismissed due to Thomas' failure to submit an affidavit pursuant to Section 2-622 of the Illinois Healing Art Malpractice Act.

### A. Illinois Tort Immunity Act

The Illinois Tort Immunity Act was enacted to "protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101.1(a). The defendants assert that they enjoy tort immunity under five separate sections of the Act. The Court will address each section separately.

11

### 1. Immunity for Public Employees that Make Policy Decisions.

Section 2-201 of the Illinois Tort Immunity Act provides that a public employee "serving in a position involving a determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS § 10/2-201. Public officials receive immunity under § 2-201 "only when the official's position requires the determination of policy or the exercise of discretion, and the act or omission that caused the injury was 'both a determination of policy and an exercise of discretion.'" *Singleton v. City of Chi.*, No. 99 C 0059, 2000 WL 224619, at *1 (N.D. Ill. Feb. 25, 2000); *quoting Harinek v. 161 N. Clark St., Ltd. P'ship*, 692 N.E.2d 1177, 1181 (1998).

In this case, Thomas only alleges an abuse of discretion in determination of policy in Count II, the § 1983 *Monell* claim. However, the Illinois Tort Immunity Act does not shield the defendants from Thomas' Section 1983 claims, because under the Supremacy Clause of the United States Constitution, federal laws are supreme to state laws. *See, e.g., Gibbons v. Ogden*, 22 U.S. 1, 3 (1824). Therefore, a state law may not shield a defendant from a federal claim, and Section 2-201 of the Illinois Tort Immunity Act does not shield the defendants from liability here. *See Anderson v. Village of Forest Park*, 238 Ill. App. 3d 83, 92, 606 N.E.2d 205, 211 (Ill. App. 1 Dist. 1992)

### 2. Immunity for Public Employees from Liability for Injuries Caused by Other Persons.

The Baird defendants argue that Sheriff Sheahan, one of the institutional defendants, is protected from liability by Section 2-204 of the Illinois Tort Immunity Act. Section 2-204

provides that "a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS § 10/2-204 (2005). The Tort Immunity Act, however, defines "public employee" as an employee of a "local public entity." 745 ILCS § 10/1-207 (2005). While other sections of the statute provide immunity to local public entities *and* public employees, the legislature chose not to include public entities under Section 2-204's umbrella of protection. Because Section 2-204 of the Immunity Act only applies to public *employees*, and not public institutions, the institutional defendants are not included within the plain language of the Tort Immunity Act, and thus Sheriff Sheahan is not protected from Section 1983 liability under this section of the Immunity Act.[11]

### 3. Immunity for Public Employees for Failure to Provide Sufficient Equipment, Personnel, Supervision, or Facilities

Neither are the defendants protected by Section 4-103 of the Illinois Tort Immunity Act, which provides that no entity that runs a jail, detention or correctional facility is liable for "failure to provide sufficient equipment, personnel, supervision or facilities therein." 745 ILCS § 10/4-103 (2005). Thomas' wrongful death claim states that the individual and institutional defendants acted wilfully and wantonly by:

> (a) [d]eliberately ignoring the serious medical needs of the decedent; (b) [f]ailing to bring the decedent's condition to the attention of medical personnel so that he could be properly diagnosed and treated; (c) [r]efusing to allow the decedent to make written requests for medical treatment; (d) [r]efusing decedent's verbal and written requests for medical attention; (e) [f]ailing to provide timely access to medical treatment for a serious condition of which they were aware; [and] (f) [o]therwise acting wilfully and wantonly toward decedent, in total and criminal

---

[11]The Court notes that to the extent Thomas plans to proceed against the official capacity defendants on a respondeat superior theory for the state survival act claim, the official capacity defendants, but not the institutional defendants, would be immune under Section 2-204 of the Illinois Tort Immunity Act.

13

disregard to his medical needs.

(Compl. ¶ 39.) These allegations of wrongful death are not premised on any negligent failure to supervise or provide sufficient personnel, equipment, or facilities. Instead, these claims allege that the defendants had actual knowledge of Smith's medical needs and wilfully denied him medical treatment. Therefore, Section 4-103 does not shield the defendants from liability. *See, e.g., Pico v. County of Cook*, No. 04 C 3559, 2004 U.S. Dist. LEXIS 25353, at **8-11 (N.D. Ill. Dec. 15, 2004) (granting protection under 4-103 "to the extent that [the plaintiff's] tort claim is based upon an alleged failure to provide sufficient personnel or supervision," but not to the extent that the claims were based on wilful conduct); *Egebergh v. Sheahan*, 955 F. Supp. 965, 968 (N.D. Ill. 1997) (finding that Section 4-103 "provides no aid to [d]efendants" where they were on notice of the plaintiff's need for immediate medical attention.)

### 4. Immunity for Public Employees for Failure to Furnish Medical Care for Prisoner

Section 4-105 of the Illinois Tort Immunity Act provides that:

> [n]either a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care.

745 ILCS § 10/4-105 (2005). Despite Section 4-105's explicit exception for willful and wanton conduct, the defendants urge this Court to hold that the defendants' actions did not amount to willful and wanton conduct. Such a determination would be inappropriate at the motion to dismiss stage, where the Court must accept Thomas' well-pleaded allegations regarding the

willful nature of the defendants' conduct. The case relied upon by the defendants, *Urban v. Village of Lincolnshire*, 272 Ill. App. 3d 1087, 1094, 651 N.E.2d 683, 688 (1st Dist. 1995), does not apply here as the Illinois Appellate Court determined, at the close of all the evidence, that the plaintiff failed to state a claim of willful and wanton conduct. Therefore, the Court rejects the defendants' argument that Section 4-105 of the Illinois Tort Immunity Act protects them from liability.

### 5. Immunity for Public Employees for Failure to Diagnose

Finally, Section 6-106(a) of the Illinois Tort Immunity Act provides that no public entity or employee is liable for "injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental or physical illness or addiction or from failing to prescribe for mental or physical illness or addiction." 745 ILCS § 10/6-106 (2005). Section 6-106(d), however, provides that "[n]othing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in administering any treatment prescribed for mental or physical illness or addiction or exonerates a local public entity whose employee, while acting in the scope of his employment, so causes such an injury." *Id.* The exception stated in § 6-106(d) precludes immunity in this instance, as Thomas repeatedly alleges that the defendants caused Smith's injuries through wrongful acts or omissions in treating the medical condition that led to his death.

### B. Illinois Healing Art Malpractice Act

The defendants also urge the Court to dismiss Thomas' wrongful death claims due to her failure to file an affidavit under the Illinois Healing Malpractice Act. This Act requires that in any action where the plaintiff seeks damages for injuries or death "by reason of medical, hospital,

15

or other healing art malpractice, the plaintiff's attorney . . . shall file an affidavit, attached to the original and all copies of the complaint," declaring that there is a reasonable and meritorious cause for filing such action or that the affiant could not obtain adequate records in order to make that determination. 735 ILCS § 5/2-622, amended 2005 Ill. Legis. Serv., P.A. 94-677 (Aug. 25, 2005). The phrase "healing art" includes "an entire branch of learning dealing with the restoration of physical or mental health." *Lyon v. Hasbro Indus., Inc.*, 156 Ill. App. 3d 649, 654, 509 N.E.2d 702, 705 (4th Dist. 1987). The term "[m]alpractice implies the lack of skill in practicing the art of profession" and is "broad enough to cover negligence in the interrelated health-care services." *Id.*

An affidavit may be required under the Healing Art Malpractice Act even where a complaint does not allege medical malpractice on its face, if the determination at issue "is inherently one of medical judgment." *Id.* at 655, 705. Illinois courts have determined that issues are inherently of medical judgment in three types of negligence suits against providers of medical services, where determining the standard of care requires application of distinctively medical knowledge or principles: "(1) malpractice suits requiring expert testimony; (2) malpractice cases not requiring expert testimony; and (3) negligence suits, essentially common-law in character, that happen to be directed against health care providers." *Woodard v. Krans*, 234 Ill. App. 3d 690, 705, 600 N.E.2d 477, 487 (2nd Dist. 1992).[12] The plaintiff is excused from Section 2-622's

---

[12]This includes cases of "gross negligence" or "common treatment" as long as these cases involve "medical, hospital or other healing art malpractice." *Woodard*, 234 Ill. App. 3d 690, 705, 600 N.E.2d 477, 487 (2nd Dist. 1992) (interpreting *DeLuna v. St. Elizabeth's Hosp.*, 147 Ill. 2d 57, 588 N.E.2d 1139 (1992)).

affidavit requirement in the third category of cases. *Id.* "

Thomas' wrongful death claim is directed toward two "healing art" professionals: James Myvette and Peggy Westbrook. Without distinguishing between healing art and non-healing art defendants, Thomas generally alleges that the individual defendants "wilfully and wantonly" committed acts or omissions which caused Smith's suffering and death, not that the defendants breached their duty by negligently committing acts of medical malpractice. (Compl. ¶¶ 38-39.) In fact, Thomas alleges that during the time Myvette and Westbrook observed Smith, he was so obviously ill that "*anyone* observing Norman could see that he was obviously in serious need of urgent medical attention." *(Id.* ¶ 11.) (emphasis added). Thus, not only does the Complaint not allege medical malpractice on its face, but the determination at issue is not inherently one of medical judgement. Therefore, Thomas was not required to submit a § 2-622 affidavit.

## CONCLUSION

For the reasons set forth above, the Court dismisses as redundant Thomas' claim that the official defendants are jointly and severally liable with the institutional defendants for Count II, the *Monell* claim. Additionally, Thomas will not be allowed to proceed on any conspiracy theory given her failure to adequately allege a conspiracy in the Third Amended Complaint. Thus, defendants' motions to dismiss are granted in part and denied in part.

Thomas is ordered to file a fourth amended complaint excluding (1) the Cook County Bureau of Health Services, which, as discussed *supra*, is a not a suable entity; and (2) any defendant who was not properly served with the Third Amended Complaint. The parties are requested to renew their settlement discussions well in advance of the upcoming December 14, 2005, status hearing.

ENTERED: _____
Judge Ruben Castillo
United States District Court

Dated: November 16, 2005