UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARLITA THOMAS, as Mother, Next )<br>Friend, and Special Administrator of )<br>NORMAN L. SMITH, JR., deceased, )<br> )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>COOK COUNTY SHERIFF, MICHAEL F. )<br>SHEAHAN; COOK COUNTY; JOHN )<br>STROGER, JR.; SGT. MONCZYNSKI, Star )<br>831; SGT; HERNANDEZ, Star 1010; SGT. )<br>STRONER, Star 944; SGT. DEW, Star 1020; LT. )<br>KRZYZOWSKI, Star 130; OFR. SANCHEZ, )<br>Star 8131; OFR. DAVIS, Star 7153; OFR. )<br>FACUNDO, Star 4254; OFR. HOUSTON; OFR. )<br>JOHNSON, Star 6273; OFR. THIEMECKE, )<br>Star 8136; OFR. TOOMEY, Star 7463; P. )<br>WESTBROOK, )<br> )<br>Defendants. ) | No. 04 C 3563<br><br>Judge Ruben Castillo |

MEMORANDUM OPINION AND ORDER

On August 15, 2007, this Court issued a memorandum opinion and order resolving

Defendants' motions for summary judgment, as well as certain motions in limine. We ordered

briefing on the remaining motions in limine: R. 259, 269, 271, 273, 274, 275, 276, 277, 278,

279, 300, 301, 307, and 312.[1] Briefing is now completed, and Defendants Cook County and

Peggy Westbrook have adopted the other Defendants' responses to Plaintiff's motions in limine.

---

[1] All of Plaintiff's motions in limine, Nos. 1 through 14, were set forth in one document
by Plaintiff. (R. 259.) Accordingly, Plaintiff's motions in limine will be referred to by number
("No."). Defendants filed separate documents for each of their motions in limine, and thus their
motions in limine will be referred to by their document number. (R. 269, 271, 273, 274, 275,
276, 277, 278, 279, 300, 301, 307, or 312.)

(R. 398, Notice of Adoption.) The Court rules on the parties' motions in limine as follows.

## ANALYSIS

District court judges have broad discretion in ruling on evidentiary questions presented before trial on motions in limine. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The district court's power to exclude evidence in limine derives from our authority to manage trials. *United States v. Caputo*, 313 F. Supp. 2d 764, 767-68 (N.D. Ill. 2004) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)); *see also Charles v. Cotter*, 867 F. Supp. 648, 655 (N.D. Ill. 1994). A motion in limine should only be granted where the evidence is clearly inadmissible for any purpose. *Caputo*, 313 F. Supp. 2d at 768. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

This Court's rulings on the parties' motions in limine are conditional. *See Wilson v. Williams*, 182 F.3d 562, 567 (7th Cir. 1999) (suggesting district courts specify whether rulings on motions in limine are conditional or definitive). As the district court aptly explained in *Hawthorne Partners*:

> Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine.

831 F. Supp. at 1401 (internal citations omitted); *see also Noble v. Sheahan*, 116 F. Supp. 2d 966, 969 (N.D. Ill. 2000). Accordingly, the Court may, in the exercise of sound judicial

discretion, amend an in limine ruling if warranted. *Caputo*, 313 F. Supp. 2d at 768 (citing *Luce*, 469 U.S. at 41-42). With these guidelines in mind, we turn to the motions before the Court.

## I.     Plaintiff's Motions in Limine

Plaintiff filed thirteen motions in limine. (R. 259, Pl.'s Mots. in Limine.) Defendants do not object to Plaintiff's motions in limine nos. 7 (barring paramedics from testifying about the cause of death of Norman Smith), 9 (barring any reference to the circumstances under which the attorneys for Plaintiff were employed, or the fees or the contingent contract under which the attorney has been retained), 10 (barring any closing argument that Plaintiff asked for more money than he expects to be awarded; that Plaintiff's recovery is not subject to income tax; that defense counsel is shocked by Plaintiff's damage request; or that Plaintiff's case would burden the public as a whole, increase taxes, or increase the Cook County budget deficit and the Sheriff's financial difficulties), 11 (barring any reference to collateral source payments for medical bills, or reference to whether the medical or funeral bills have been paid), and 13 (barring any reference to the fact that the motions in limine were filed or allowed). (R. 396, Defs.' Resp. to Pl.'s Mots. in Limine.) Accordingly, these motions in limine are granted. (R. 259, Pl.'s Mots. in Limine.) Defendants object to Plaintiff's remaining motions in limine.

## A.     Plaintiff's Motion in Limine No. 1 to Bar Evidence of Prior Arrests, Criminal Involvement, and Convictions of Norman Smith (R. 259)

The Court agrees with Plaintiff that evidence of Smith's prior arrests, criminal involvement, and convictions should be barred. Contrary to Defendants' arguments, this evidence is not admissible under Federal Rule of Evidence ("FRE") 609, which allows evidence of conviction of a crime for impeachment purposes. Not only is Smith deceased and unable to

3

testify at trial, but Defendants do not show that his prior arrests and convictions meet the requirements of FRE 609(a), that the probative value of the conviction outweighs the prejudicial effect, or that the crime was punishable by imprisonment in excess of one year or involved an act of dishonesty. This ruling, however, does not preclude Defendants from raising the fact of Smith's 7-day incarceration in Cook County Jail as to the only relevant purpose this Court can foresee: Smith's alleged knowledge of the rules and regulations at the Cook County Jail and the grievance process. Accordingly, Plaintiff's motion in limine no. 1 is granted.

**B.** **Plaintiff's Motion in Limine No. 2 to Bar Any Reference to Drug Use by Norman Smith (DOB 11-11-1971) and the Medical Records of a Norman Smith (DOB 4-10-57)** (R. 259)

Defendants do not object to Plaintiff's motion to bar the medical records of a different Norman Smith (born April 10, 1957), who is not involved in this case. This part of Plaintiff's motion in limine no. 2 is granted.

Defendants object to the second part of this motion in limine because, they argue, evidence of Smith's drug use is relevant to "demonstrate[] the accuracy and thoroughness of the medical intake records," and may have "played a part in Norman Smith's contraction of meningitis." (R. 396, Defs.' Resp. to Pl.'s Mot. in Limine No. 2, ¶ 4.) The question of how Smith may have contracted meningitis, however, is not relevant to the issue of whether he received inadequate medical attention during his incarceration in Cook County Jail, and evidence of alleged drug use would likely prejudice the jury. In addition, Smith's alleged drug use (which was not mentioned in his medical intake records) does not speak to the accuracy or thoroughness of the medical intake records. Accordingly, Plaintiff's motion in limine no. 2 is granted.

4

**C.    Plaintiff's Motion in Limine No. 3 to Bar References to Criminal Arrests or Convictions of Any of Plaintiff's Witnesses** (R. 259)

Plaintiff argues that Defendants should not be allowed to present this evidence at trial because she does not "believe" any of her witnesses' criminal convictions would be properly admitted under Federal Rule of Evidence 609, and Defendants did not produce any of the witnesses' "rap sheets" in discovery. Despite Plaintiff's "belief," Defendants may use evidence of witnesses' prior convictions—not more than 10 years old—for the purpose of impeachment if it meets the standards set forth in FRE 609: that the crime was punishable by imprisonment in excess of one year, and the probative value exceeds the prejudicial effect; or the crime involved an act of dishonesty or false statement. Fed. R. Evid. 609(a). Moreover, Defendants did not have an obligation to produce the witnesses' "rap sheets," as they could only be used for impeachment purposes. "In accordance with Fed. R. Civ. P. 26(a)(1)(A) & (3), evidence offered 'solely for impeachment purposes' does not have to be disclosed prior to trial." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 869 (7th Cir. 2005). Plaintiff's motion in limine no. 3 is thus denied.

**D.    Plaintiff's Motion in Limine No. 8 to Bar Any Character or Bolstering Evidence on Behalf of Defendant Sheriff and Correctional Officers** (R. 259)

The Court agrees with Defendants that Plaintiff's motion in limine no. 8 is improper. Federal Rules of Evidence 607 and 608 allow for the character or credibility of a witness to be attacked or supported by evidence under certain circumstances. This Court will rule on specific evidentiary issues as they arise at trial. Therefore, Plaintiff's motion in limine no. 8 is denied.

### E.   Plaintiff's Motion in Limine No. 12 to Bar Any Reference to Medical Treatment Afforded Tier 1-M Inmate George Robotis (R. 259)

Plaintiff argues that any reference to medical treatment given to inmate George Robotis should be barred because: (1) medical treatment afforded Robotis is not relevant; and (2) Defendants did not produce medical records regarding the treatment afforded to Robotis. (R. 259.) As Plaintiff's primary argument is that Tier 1-M inmates are not afforded adequate medical care, any medical care received by Robotis during the relevant time frame is, indeed, relevant. Based on the documents produced in this case, Plaintiff knew that Robotis received medical treatment during the time Smith was incarcerated, and Plaintiff was on notice that Defendants intended to use this information. The Court accepted Defendants' reasoning for their delay in producing the one-page medical record for Robotis, and Plaintiff was not prejudiced by the delay in its production for the reasons stated. (R. 412, 9/11/07 hearing.) Accordingly, Plaintiff's motion in limine no. 12 is denied.

## II.   Defendants' Motions in Limine

Defendants, for their part, also filed numerous motions in limine—R. 269, 271, 273, 274, 275, 276, 277, 278, 279, 300, 301, 307, and 312. (R. 280, 358.) Plaintiff does not object to Defendants': (1) motion in limine to bar any previously undisclosed witnesses and to exclude witnesses from the courtroom during trial (R. 273);[2] (2) motion in limine to bar any argument of

---

[2] Plaintiff objects to the "broad language" of Defendants' motion to bar previously undisclosed witnesses, because Defendants have previously disputed which witnesses were disclosed. However, this Court resolved this dispute in its recent summary judgment opinion, where we held that Plaintiff sufficiently disclosed inmates Titus Haynes, George Robotis, Darius Parker, and Alan Robinson as witnesses. *See Thomas v. Sheahan*, __ F. Supp. 2d __, No. 04 C 3563, 2007 WL 2324007, at *2 (N.D. Ill. Aug. 15, 2007).

punitive damages against Sheriff Sheahan (R. 274); and (3) motion in limine to bar Plaintiff from informing the jury of any indemnification rights which may exist under Illinois law (R. 312). Accordingly, these motions in limine are granted. The following motions in limine are disputed.

### A. Defendants' Motion in Limine to Bar Testimony About Jail Conditions (R. 271)

Defendants seek to bar all testimony about "jail conditions," which they also refer to as "jail cleanliness," on relevance grounds. Some of this testimony, however, is relevant to this case. For example, Plaintiff argues that Defendants should have known Smith was sick because he was throwing up in his cell and in the day room. Accordingly, Defendants' motion in limine to bar testimony about jail conditions is denied. (R. 271.) As stated above, this Court will rule on specific evidentiary issues as they arise at trial.

### B. Defendants' Motion in Limine to Bar Evidence of Media Coverage (R. 279)

Plaintiff does not object to Defendants' motion in limine to bar evidence of media coverage, except for purposes of impeachment; *i.e.*, to rebut a Defendant's testimony that they were unaware of issues relating to inmate deaths from allegedly poor access to medical care. (R. 401, Pl.'s Resp. to Defs.' Mot. in Limine 273, 274, and 279 at 2.) The Court will grant Defendants' motion in limine in part, with an exception for use of this material for proper impeachment purposes. (R. 279.)

### C. Defendants' Motion in Limine to Bar Photographs of Norman Smith (R. 275)

Defendants next seek to bar postmortem photographs of Smith on the grounds that their probative value is substantially outweighed by the danger of unfair prejudice to Defendants under FRE 403. While Plaintiff does not object to barring photographs of Smith's autopsy, Plaintiff

argues that photographs of Smith prior to his autopsy are more probative than prejudicial. (R. 402, Pl.'s Resp. to Defs.' Mot. in Limine to Bar Photographs at 1.) This Court agrees with Plaintiff that photographs of Smith prior to his autopsy are relevant to the issue of whether Defendants should have been aware of his illness, and the probative value of this evidence outweighs its prejudicial value. Accordingly, Defendants' motion in limine is granted as to autopsy and post-autopsy photographs, but denied as to pre-autopsy photographs. (R. 275.)

### D. Defendants' Motion in Limine to Bar Any Evidence of Loss of Income or Payments of Child Support and Motion in Limine to Bar Plaintiff from Presenting any Evidence of Special Damages (R. 276, R. 300)

Both of these motions seek to bar Plaintiff from presenting evidence of Smith's employment history or evidence of any financial support Smith provided to his children, wife, or other family members. Defendants argue that such evidence should be barred because Plaintiff has not produced documentary evidence of lost wages or child support payments. Plaintiff claims that she has never been in possession of such documentation, but she has disclosed to Defendants her intention to have witnesses testify to their knowledge of Smith's employment history and child support payments. (R. 407, Pl.'s Resp. to Defs.' Mots. to Bar Evid. of Special Damages, Loss of Income or Payments of Child Support at 2.) As witness testimony will be subject to Defendants' cross-examination and the Federal Rules of Evidence, the risk of prejudice from this relevant material is minimal, and Defendants' motions in limine (R. 276 and R. 300) are denied.

### E. Defendants' Motions in Limine to Bar Evidence of Other Lawsuits and Grievances (R. 277)

Defendants' next motion in limine seeks to bar references to prior cases of meningitis and

detainee grievances at Cook County Jail. This Court already addressed the issue of the admissibility of various detainee grievances and prior cases of meningitis in its opinion on summary judgment. In that opinion, we granted Defendants' motion to strike the portion of Plaintiff's statement of facts in which Plaintiff attempted to incorporate by reference all materials filed in the case of *Addie McCall v. Sheahan*, 03 C 5948, 2003 WL 23801014 (N.D. Ill. filed Aug. 22, 2003). *Thomas*, 2007 WL 2324007, at *3. Additionally, in that opinion, this Court denied Defendants' motion in limine to bar evidence and testimony about the "Detainee Grievance" dated April 19, 2004. *Id.* at *31. Thus, this Court does not believe it is appropriate to grant a broad motion to bar evidence of other lawsuits and grievances, and Defendants' motion (R. 277) is denied. Instead, the Court will consider selectively admitting any grievances which are closely related in time and circumstances to Plaintiff's case.

**F.    Defendants' Motion in Limine to Bar Evidence of Settlement or Final Disposition** (R. 278)

Defendants' next motion in limine seeks to bar evidence of settlement or final disposition, specifically in the *McCall* case discussed above. Plaintiff does not dispute that evidence of the settlement in the *McCall* case is not admissible to show liability under Federal Rule of Civil Procedure 408. Plaintiff argues, however, that the facts of the *McCall* case are relevant to the instant case because a Cook County Jail inmate died of meningitis in that case. This Court, however, has already struck Plaintiff's statement of facts in that regard, and Plaintiff has made no further showing of the relevance of the *McCall* case. Defendants' motion in limine to bar evidence of final disposition in the *McCall* case is thus granted. (R. 278.)

9

## III.    Motions in Limine to Bar or Limit Expert Testimony

Both parties have filed motions in limine to bar or limit testimony by the other's experts.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the

Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  *Ervin v.*

*Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).  FRE 702 states:

> [i]f scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Trial courts have broad discretion under FRE 702 to admit or exclude expert

testimony.  *United States v. Smith*, 869 F.2d 348, 351 (7th Cir. 1989).

Under the *Daubert* framework, courts apply FRE 702 by determining whether the expert

testimony is both relevant and reliable.  *Ervin*, 492 F.3d at 904.  This is a three-step analysis:  (1)

"the witness must be qualified as an expert by knowledge, skill, experience, training, or

education;" (2) "the expert's reasoning or methodology underlying the testimony must be

scientifically reliable;" and (3) "the testimony must assist the trier of fact to understand the

evidence or to determine a fact in issue."  *Id.* (citing Fed. R. Evid. 702 and *Daubert*, 509 U.S. at

592-93.)  The first two prongs of this framework evaluate the reliability of the expert's

testimony, and the third prong evaluates the testimony's relevance.  *Ammons v. Aramark Uniform*

*Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004).  The Seventh Circuit "consider[s] a proposed

expert's full range of practical experience as well as academic or technical training when

10

determining whether that expert is qualified to render an opinion in a given area." *Trustees of Chi. Painters and Decorators Pension v. Royal Intern. Drywall and Decorating, Inc.*, 493 F.3d 782, 787-88 (7th Cir. 2007) (internal citations omitted).

### A.    Plaintiff's Motion in Limine No. 4 to Bar All Opinion and Hearsay Testimony by Charles Fasano of the John Howard Association (R. 259)

Plaintiff claims that Fasano's testimony should be barred because Defendants never disclosed Fasano as an expert, and Fasano's testimony is not relevant. In their response, however, Defendants represent that Fasano, a court-appointed monitor who visits the CCDOC twice per month, will testify not as an expert, but based on his direct knowledge and first-hand observations of the policies and procedures at the jail.[3] (R. 396, Defs.' Resp. to Pl.'s Mot. in Limine No. 4 ¶¶ 3-4.) Thus, the alleged failure to disclose Fasano as an expert will not prejudice Plaintiff, who has already deposed Fasano. (*Id.*) Moreover, Plaintiff's claim that Fasano does not have relevant information is without merit, as Fasano made twice monthly visits to Cook County Jail during the relevant time period. Thus, the Plaintiff's motion in limine no. 4 is denied. (R. 259.)

### B.    Plaintiff's Motion in Limine No. 5 to Bar Any Testimony by Dr. Vescio Not Supported by Science and the Facts of this Case (R. 259)

While Plaintiff presents no argument in support of this motion, in an abundance of caution, this Court will nevertheless determine whether Dr. Vescio's expert testimony and reports are sufficiently relevant and reliable to be admissible at trial. Dr. Vescio's testimony,

---

[3] In their response, Defendants purport to attach an "Exhibit 1, Defendants' Rule 26 Disclosures" as evidence that they did disclose Fasano as an expert; however, there was no such attachment to their response. (R. 396, Defs.' Resp. to Pl.'s Mot. in Limine No. 4, ¶ 2.) If Defendants do wish to tender Fasano as an expert, they will have to provide documentation that they disclosed him as an expert.

11

which goes to the manifestations and other details of meningitis—of which Smith died—is clearly relevant to this case. This Court has carefully reviewed both Dr. Vescio's expert report and deposition testimony, and finds that both his education and experience in the field of infectious diseases qualifies him to testify as an expert in this case. Accordingly, Plaintiff's motion in limine no. 5 is denied. (R. 259.)

### C. Plaintiff's Motion in Limine No. 6 to Bar All Opinion Testimony by Dr. John Raba (R. 259)

The extent to which Defendants seek to use Dr. Raba's testimony and reports is unclear. On the one hand, it appears that Defendants seek to elicit Dr. Raba's first-hand testimony as to the role he played in investigating Smith's death at Cook County Jail. On the other hand, it appears that Defendants wish to have Dr. Raba—a long-time head of Cermak—testify as an expert on both the dispensation of medical care at Cook County Jail and meningitis. Plaintiff argues that Dr. Raba should not be allowed to provide any opinion testimony in this case because he bases his testimony on the minutes of a Cermak mortality committee meeting, which Defendants have withheld on the grounds of privilege. In their response, Defendants dispute that Dr. Raba actually relied on the mortality committee minutes because Dr. Raba does not recall reading them and he does not refer to those minutes in his opinion. (R. 396, Defs.' Resp. to Pl.'s Mot. in Limine No. 6, ¶¶ 3-4.) If Plaintiff believed that Defendants erred in withholding the mortality committee minutes, however, Plaintiff could have brought a motion to compel. At this point, the withholding of the minutes is not a reason to bar all opinion testimony of Dr. Raba.

The problems with Dr. Raba's testimony and his March 2006 opinion letter, however, go beyond the mortality committee minutes. Defendants have presented no evidence that Dr. Raba

12

is an expert on meningitis or infectious diseases, and thus his testimony as to the manifestations of meningitis is not sufficiently reliable under *Daubert* and FRE 702. Accordingly, Plaintiff's motion in limine no. 6 to bar opinion testimony by Dr. Raba is granted only insofar as it relates to Dr. Raba's testimony about the manifestations or transfer of meningitis. (R. 259.)

### D. Defendants' Motion in Limine to Bar Plaintiff's Experts From Expressing Opinions Based on Hearsay Witness Statements (R. 307)

Defendants seek to bar Plaintiff's experts from expressing opinions based on hearsay witness statements. Such a motion is too broad, however, because "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592, 595. An expert may even rely on hearsay evidence if the data is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject." *Id.* Moreover, Plaintiff's experts relied on multiple non-hearsay sources as well in forming their opinions, and Defendants have not shown that the evidence relied upon by Plaintiff's experts was not of the type reasonably relied upon by experts in the particular field. *Id.* Accordingly, Defendants' motion is denied. (R. 307.)

### E. Defendants' Motions in Limine to Bar Testimony and Evidence of William F. Naber, or in the Alternative to Hold a Rule 104(a) Hearing (R. 269, 301)

Defendants filed two separate motions seeking to bar the testimony and evidence of William Naber, Plaintiff's purported "jail operations expert." (R. 269, Defs.' Mot. to Bar Naber Testimony and Evidence; R. 301, Def. Cook County's Mot. to Bar Naber Testimony.) Naber survives the first prong of the *Daubert* framework: that he "must be qualified as an expert by knowledge, skill, experience, training, or education." *Ervin*, 492 F.3d at 904. Plaintiff seeks to qualify Naber as an expert in "jail operations" because he served as a Deputy Sheriff in Marin

County, California from 1965 to 1980; as a Sonoma County Detention Administrator, Sheriff's Captain from 1980 to 1984; as an assistant court compliance officer and court officer from 1984 to 1987; and has since owned and run Naber Technical Enterprise, in which he has instructed and consulted on "corrections and police training," developed jail policy manuals, and researched and consulted on "law enforcement" and "criminal justice" issues. (R. 269, Defs.' Mot. to Bar Naber Testimony and Evidence, Ex. 6, Naber Resume.) Naber's resume also includes a long list of independent studies and continuing professional education courses he has completed, as well as teaching he has done about correctional and detention facilities. (*Id.*) Naber also provides a list of his relevant "publications," most of which appear to be materials from the various courses he has taught.

Only a small portion of Naber's testimony, however, will assist the jury "to understand the evidence or to determine a fact in issue," and thus, most of Naber's testimony fails to satisfy the *Daubert* standard for admissibility. *Ervin*, 492 F.3d at 904. For instance, in his expert report and deposition testimony, Naber repeatedly opines that certain important documents were not produced by Defendants. (R. 301, Cook County Mot. in Limine to Bar Naber's Testimony, Ex. A, Naber Report at 1.) An expert report, however, is not the appropriate venue to seek or attack missing documents. This portion of Naber's opinion is inadmissible.

Naber then concludes that that the Cook County Department of Corrections ("CCDOC") "has customs, practices, and policies that endanger inmates and staff, and that these policies and practices were the substantial causal factor in Mr. Smith's death." (*Id.*) This conclusion is inappropriate, however, because whether policies or practices were a "substantial causal factor" in Smith's death would be outcome determinative in this case. Expert testimony as to legal

14

conclusions that will determine the outcome of the case is inadmissible. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003); *see also U.S. v. Caputo*, 382 F. Supp. 2d 1045, 1049 (N.D. Ill. 2005) ("An expert witness cannot offer an opinion on what the law requires or permits because the judge, not the witnesses, instructs the jury about the relevant law."). Likewise, Naber's testimony to the ultimate legal conclusion in this case—that Defendants were "deliberately indifferent," or that Cook County had a longstanding practice, custom, or policy of condoning various alleged violations of inmates' rights—is inadmissible. (*See, e.g.*, R. 301, Cook County Mot. in Limine to Bar Naber's Testimony, Ex. A, Naber Report at 4.)

To support his conclusions, Naber also sets forth seven "facts"—A through G—in his expert report, most of which are not admissible:

### 1. Naber "Fact A": The CCDOC does not meet minimum standards of conduct for training of correctional staff.

Much of Fact A of Naber's report falls short of meeting the standard set forth in FRE 702 and *Daubert*. While Naber makes sweeping statements that the CCDOC training was inadequate under Occupational Safety and Health Administration ("OSHA") and Illinois standards, he does not indicate which provisions of OSHA or Illinois law the CCDOC training violates. (*Id.* at 4.) The "absence" of certain training documents does not "speak for itself" as Naber claims, and if it did, then an expert's opinion would not be necessary on the matter. (*Id.* at 4-5.) This portion of Naber's opinion is inadmissible. Based on his experience and education, however, Naber may testify to standard training practices in the correctional profession.

15

**2.    Naber "Fact B": The CCDOC jail activities records are incomplete and indicate a lack of systematic recordation of official and ministerial duties in the care and safekeeping of inmates. The lack of medical referral records or log entries is notably nonexistent. There is evidence that these standard practice records were falsified as a standard practice and policy by jail staff at all levels.**

In "Fact B," Naber claims that CCDOC records were somehow "falsified" because various officer or sergeant logs were missing or incomplete or because some of the officer logs state that the officer performed security checks in two different locations at the same time. (*Id.* at 5-6.) Naber, however, is not an expert in document examination or handwriting. (R. 301, Cook County Mot. in Limine to Bar Naber's Testimony, Ex. B, Naber Dep. at 22, 32.) He has no special skills in deciphering whether a record showing an officer in two places at one time means an officer was lying as opposed to merely being sloppy. Naber's testimony that certain documents are inconsistent is not scientific, technical, or otherwise specialized, and thus would not assist the jury to understand the evidence. An expert's opinion is only admissible if the witness draws on specialized expertise to formulate his or her opinion. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999). Accordingly, Naber's opinion that the inconsistent officer records amounts to deliberate "falsification" does not meet the standard for admissibility of expert testimony under FRE 702 and *Daubert*. Nevertheless, Naber may testify to whether certain officer or sergeant logs were incomplete, based on his experience and studies.

**3.    Naber "Fact C": Division 5 is grossly understaffed. The lack of trained, competent corrections staff means no responsible authority is watching and protecting inmates. In this case the lack of staff mean cell and inmate welfare checks where [sic] not being made before Mr. Smith was found dead.**

In this section, Naber opines that the practice of cross-watching at Cook County Jail is

unsafe and that Division 5 at the jail is understaffed. While Naber may have the expertise to opine on these issues based on his law enforcement experience and studies, Naber's opinion will not be allowed to the extent that it is interwoven with inadmissible opinion. For example, as explained above, Naber may not opine that certain "handwriting" or missing reports are "indications that staff is falsifying or spoliating jail operational records." (R. 301, Cook County Mot. in Limine to Bar Naber's Testimony, Ex. A, Naber Report at 7.) In addition, Naber's testimony and report are filled with opinions on the veracity of the officer and Cermak witnesses. However, "the credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury—determining the credibility of witnesses." *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999). Naber's opinions on the issues of jail staffing and cross-watching will be allowed only to the extent that he can separate his admissible from his inadmissible opinions.

### 4. Naber "Fact D": The medical practices and procedures provided by Cermak are substandard or non-existent.

Naber is not qualified to opine on the issue of medical practices and procedures. Naber opines as to the detectability and treatability of bacterial meningitis, although nowhere does he state his qualifications for understanding or diagnosing infectious diseases. In fact, Naber admits he is not an expert on infectious diseases or meningitis. (R. 301, Cook County Mot. in Limine to Bar Naber's Testimony, Ex. B, Naber Dep. at 8-11.) Accordingly, Naber does not meet the *Daubert* reliability prong on this issue. Moreover, as the Court ruled above, how Smith may have contracted meningitis and how meningitis and other diseases are transferred is not relevant to the issue of whether he received inadequate medical attention during his incarceration.

17

In addition, Naber's opinion on the issue of medical practice and procedures is also inadmissible because it is replete with unsupported speculation, such as, "I do not believe these 'Medical Staff visits' included going into cell areas to pass out medications, look for or listen to inmate medical complaints and check on the well-being of inmates under medical services." (R. 301, Cook County Mot. in Limine to Bar Naber's Testimony, Ex. A, Naber Report at 9.) This opinion does not meet *Daubert*'s standard for reliability of expert testimony, as this Court must "reject any subjective belief or speculation" by a proposed expert. *Ammons*, 368 F.3d at 816. Moreover, much of Naber's report and deposition testimony amounts to mere repetition of inmates' deposition testimony, which would not assist the trier of fact. Finally, as explained above, Naber's conclusory testimony as to violations of unspecified OSHA and state health standards also does not meet the *Daubert* standards for reliability. Accordingly, Naber's testimony as to "Fact D" will not be allowed.

### 5. Naber "Fact E": Correctional officers and medical staff are derelict in their duties to supervise and care for dangerously sick inmates.

Once again, most of Naber's opinion is inadmissible for being both speculative and stating legal conclusions. In this section, Naber's report states that "[t]he fact that Mr. Smith was allowed to die over a 6 day period is unconscionable!" and he opines on whether various alleged activities at the Cook County Jail satisfy the *Duran* Consent Decree. (R. 301, Cook County Mot. in Limine to Bar Naber's Testimony, Ex. A, Naber Report at 9.) As explained above, speculative expert testimony and expert testimony as to legal conclusions is inadmissible. The meaning of the law—here, the *Duran* Consent Decree—"is not a question of fact, to be resolved by the jury after a battle of experts," but is instead "a question of law, to be resolved by the court."

*Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994). Nevertheless, based on his experience, Naber may testify to correctional standards with regard to supervision and security checks. (R. 301, Cook County Mot. in Limine to Bar Naber's Testimony, Ex. B, Naber Dep. at 145-49.)

> 6.  **Naber "Fact F": The CCDOC appears to be in violation, or at least non-compliance, with previous Court Orders, Settlement Agreements, Consent Decrees and Written Protocols. Defendants knew the standards of conduct for jail operations and basic medical services because of these prior litigations. All the defendants continue to ignore those minimum levels of official responsibility and legal contracts with local courts.**

Naber's testimony as to Fact F, in which he opines that the CCDOC is in violation of or in non-compliance with Court Orders, Settlement Agreements, Consent Decrees and Written Protocols, is completely inadmissible. "While 'legal' testimony is permissible in some circumstances—such as when a witness is called to testify on the probable meaning of an ambiguous contractual term, rather than on the law that governs the case—only experts with the proper legal background (in the above example, a lawyer with experience regarding the type of contractual provisions at issue) may offer such testimony." *In re Ocean Bank*, 481 F. Supp. 2d 892, 898 (N.D. Ill. 2007) (citing *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 365-66 (7th Cir. 1990)). Naber does not establish the minimum level of expert competence required by FRE 702 for analyzing legal documents. In fact, Naber does not even identify many of the court orders and written protocols referenced, thus further failing to satisfy FRE 702, which requires that the expert's testimony be the product of reliable principles and methods. Without identification of the relevant legal documents he is purporting to rely on, Naber may not testify to his ultimate conclusion that the CCDOC was in violation of them.

7. **Naber "Fact G": Sheriff Sheehan [sic] had to know of the dangerous conditions in his jail. He is derelict in his basic duties of Sheriff to ensure the proper operation of jails under his authority and to ensure the basic human needs of the inmates in his charge.**

Fact G, which states that the Sheriff had knowledge of the dangerous conditions in the jail, is barred for the same reason that Naber may not testify as to the "substantial cause" of Smith's death: expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible. *Good Shepherd*, 323 F.3d at 564. Defendants' knowledge or reckless disregard constitute the "deliberate indifference" standard at the heart of this case, and Naber may not testify to this ultimate legal conclusion.

Accordingly, Defendants' motions in limine to bar Naber's testimony and evidence are granted in part and denied in part. (R. 269, 301.)

20

## CONCLUSION

Accordingly Plaintiff's motions in limine (R. 259) are granted in part and denied in part as stated above. Defendants' motions in limine R. 271, 276, 277, 300, and 307 are denied for the reasons stated above. Defendants' motions in limine R. 273, 274, 278, 312 are granted as stated above. Defendants' motions in limine R. 269, 275, 279, and 301 are granted in part and denied in part.

The trial of this lawsuit will proceed as scheduled on November 26, 2007. The Court expects the parties to fully abide by the evidentiary rulings made herein. Any issues related to these rulings must be raised outside of the jury's presence. The parties should also reevaluate their final settlement positions in light of these rulings.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

Dated: September 21, 2007