IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MARLITA THOMAS, as Mother, Next Friend, and Special Administrator of NORMAN L. SMITH, JR., deceased,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>SHRIEFF OF COOK COUNTY, COOK COUNTY, et al.<br>　　　　Defendants. | No. 04 C 3563<br><br>Judge Castillo |

## DEFENDANTS' JOINT MOTION FOR JUDGMENT AS MATTER OF LAW

NOW COME Defendants, SHERIFF OF COOK COUNTY, OFFICER ALEX SANCHEZ, OFFICER DONETTA DAVIS, OFFICER TERRENCE TOOMEY, OFFICER DOUGLAS JOHNSON, OFFICER LOUIS THIEMECKE, OFFICER DARRYL HOUSTON, OFFICER JESUS FACUNDO, PEGGY WESTBOOK and COOK COUNTY, (hereinafter referred to collectively as "the Defendants"), by and through their attorneys, Daniel F. Gallagher, Larry S. Kowalczyk, Dominick L. Lanzito, QUERREY & HARROW, LTD., Assistant State's Attorney Andrew Creighton, Assistant State's Attorney Edward Maloney, and the COOK COUNTY STATE'S ATTORNEY'S OFFICE, and move this Honorable Court pursuant to Federal Rule of Civil Procedure 50 for Judgment as a Matter of Law for Plaintiff's policy claims against the Sheriff of Cook County and Cook County and the claims against the individual Defendants. In support of this motion, the Defendants state as follows:

1. Defendants' previously moved for summary judgment on Plaintiff's individual and policy claims. That motion was granted in part and denied in part. According to this Court's Memorandum and Opinion, the following policy claims are still part of Plaintiff's case:

　　A. Cook County failed to have a system in place so that the medical request of the

detainees were not reviewed promptly by properly trained medical staff and acted upon in a reasonable manner;
B. Cook County had a practice of severely under-staffing correctional officers;
C. Cook County had a practice of failing to fix broken video monitors in the Cook County Jail;
D. The Cook County Sheriff's Office had policy of Correctional Officers falsifying their Daily Tier Logs.

2. Plaintiff has elicited testimony from multiple witnesses, including the named individual Defendants. None of the individual officers have been identified as committing any wrongful conduct. In fact, Plaintiff's witnesses could not even recall if the individual officers were male or female.

3. Federal Rule of Civil Procedure states in pertinent part,

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>   (A) resolve the issue against the party; and
>   (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. Fed. R. Civ. Proc. 50(A)(1).

4. A party may make a motion for a judgment as a matter of law at any time before the case is submitted to the jury. Fed. R. Civ. Proc. 50(A)(2).

## POLICY CLAIMS

5. Even examining the evidence and testimony in the light most favorable to Plaintiff, there is no evidence that there was a policy that violated the constitutional rights of Norman Smith.

**Cook County's alleged failure to have a system in place so that the medical request of**

## **the detainees were not reviewed promptly by properly trained medical staff and acted upon in a reasonable manner.**

6.  The recurring theme amongst the testimony concerning the medical treatment in Division 5, Tier 1M, is that multiple detainees made complaints and received medical attention. In fact, several detainees received immediate medical attention upon request.

7.  Detainees such as George Robotis, Anthony Hippe, Greg Sanders, Daniel Jones (two movements), and Alan Robinson all received medical attention. Notably, George Robotis received unscheduled medical treatment on April 28, 2004 by making an oral request to a correctional officer, who then in turn contacted medical staff. It is undisputed that Robotis received medical attention via an oral request. Additionally, the movement of Daniel Jones to the medical dispensary at 1400 hours (2p.m.) on April 29, 2004, the day before plaintiff passed, was also unscheduled.

8.  More importantly, Carlos Matias, Norman's cellmate, was taken to Cermak for methadone treatment nearly every day of the week that Norman was housed at the Cook County Jail.

9.  It is also undisputed that there are written policies concerning medical requests and detainee health care. Jean Kiriazes, Dr. John Raba, and other Cermak personnel testified that written medical requests are for non-emergent medical care.

10. Additionally, written medical request are not a prerequisite to receiving health care at the Cook County Jail. The medical records demonstrate that Peggy Westbrook distributed medications to detainees during her rounds to the tiers. She testified that the detainees approached her while she was dispensing prescribed medications on Tier 1M and she gave the detainee over the counter medications for his ailments.

11. The only evidence of a written medical request was related to Norman's April 29, 2004 medical request. However, there is no evidence of what time the request was written or if the request was ever in fact submitted. Dr. Raba testified that Matias handed him the medical request on April 30th, the day that Norman passed away. However, even if Norman had submitted this medical request, it at best is an isolated incident and not evidence of a widespread practice or custom of denying medical care.

12. There is no evidence that was adduced at trial that there was any widespread denial of medical care at the Cook County Jail. To the contrary, multiple detainees in Division 5 received non-scheduled medical care upon request in addition to multiple scheduled medical visits. Based on the facts presented to date, there is no evidence upon which a reasonable jury could rely upon to find that Cook County failed to have a system in place so that the medical request of the detainees were not reviewed promptly by properly trained medical staff and acted upon in a reasonable manner. Therefore, judgment as a matter of law pursuant to Fed. R. Civ. Proc. 50 in favor of Defendants and against Plaintiff is warranted.

**Cook County alleged practice of severely under-staffing correctional officers;**

13. There has been no evidence that the staffing levels at the jail contributed in any way to the death of Norman Smith. In addition, there has been no evidence that cross watching has never caused a problem getting medical attention. In fact, Woodroe Winfrey and Peggy Westbrook have testified that there has never been a problem getting on the tier. Furthermore, all medical personnel have testified that Correctional Medical Technicians can call a sergeant or area officer if there was no officer at the tier.

14. Even Plaintiff's witnesses have testified that they allegedly complained to the

officers on every shift. In that sense, there were obviously available officers available, if detainees complained were able to complain. Lastly, there has been testimony that as soon as they asked Officer Sanchez was asked to help Norman Smith on April 30, 2004, he arrived immediately. Clearly the staffing levels at the jail did not cause Norman Smith's death because there were always officers around Norman Smith during the course of his incarceration. Thus, Plaintiff cannot and has not established that there was a policy of understaffing the correctional officers that led to the death of Norman Smith.

### Cook County's alleged practice of failing to fix broken video monitors in the Cook County Jail.

15. There has been no evidence that the operation of the monitors was the cause of Norman Smith's death. Specifically, Officer Sanchez testified that if he were cross-watching on Tiers M1 and L1, the monitor in Tier L1 was operational and he was able to see into Tier M1 at any time he was sitting in Tier L1. Thus, there is no evidence that officers were unable to see into M1 when on Tier L1.

16. Moreover, there was testimony from Officer Houston that the monitors are no substitute for physical inspections. Lastly, cross-watching occurred on the 11-7 shift when the detainees were locked in their cells. The undisputed testimony has shown that the cameras and monitors do not show the interiors of the cells. Thus, the operation of the monitors had no causal relationship to Norman Smith's death.

### The Cook County Sheriff's Office alleged policy of Correctional Officers "falsifying" their Daily Tier Logs.

17. The only "evidence" that the officers falsified their Tier Logs came from Plaintiff's expert William Naber. Plaintiff has not called William Naber to testify and indicated that they would not on the last day of Plaintiff's case in chief. Moreover, this Court

granted a Motion in Limine barring Naber from testifying to any falsification of records. Plaintiff has not adduced any testimony that there was any falsification. Each officer stated that their security checks were completed and the approximate times were recorded. The record is devoid of any evidence of falsification of records and therefore, this Court should grant a judgment as a matter of law in favor of the Cook County Sheriff and against Plaintiff.

## INDIVIDUAL CLAIMS

18. It is well established that in order for the Plaintiff to state a cause of action against the Defendants under 42 U.S.C. § 1983, she must allege that each individual personally caused or participated in the alleged constitutional deprivation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). Therefore, the individual defendants can only be held liable in his individual capacity if, by his/her own conduct, he/she caused or participated in the alleged constitutional violations. *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998), *citing Duckworth v. Franzen*, 780 F.2d at 650. As stated below, Plaintiff has not established that the individual defendants were responsible for the death of Norman Smith.

### Peggy Westbrook

19. There has been absolutely no evidence of any inappropriate conduct against Peggy Westbrook. There is evidence and documentation that she was on Tier M1 on Monday, April 26, 2004, Tuesday, April 27, 2004 and Wednesday, April 28, 2004. During those rounds she administered medication, picked up medical request forms, and treated at least two detainees (Hippe and Jamison) after receiving oral medical complaints from those detainees.

20. Notably, she was not on duty April 24, 2004, April 25, 2004, nor was she on duty April 29, 2004, the day before Norman's death and April 30, 2004, the day of Norman's

6

death. More importantly she was never identified, by name or physical description, by any witness as the CMT that purported ignored oral or written medical requests for Norman Smith. Therefore, Plaintiff has not demonstrated, nor can they demonstrate, that Peggy Westbrook personally caused or participated in the alleged constitutional deprivation and thus, cannot be held liable in her individual capacity.

### Donetta Davis

21. Similarly, Correctional Officer Donetta Davis worked on the 7-3 shift on the same days that Peggy Westbrook worked and provided medical attention to the detainees Tier M1. Thus, all of the medical attention provided by Peggy Westbrook occurred on Correctional Officer Davis' shift. There is no evidence that Donetta Davis did not perform her duties as required by Cook County Department of Corrections policy.

22. There has been absolutely no testimony that a female correctional officer ever ignored Norman's medical request. Plaintiff cannot point to any testimony, under the most liberal of interpretations, that identifies Donetta Davis as an individual that was deliberately indifferent to Norman Smith's medical needs. Therefore, based on the lack of evidence, no reasonable jury could find that Correctional Officer Davis was deliberately to Norman Smith's need.

### Jesus Facundo

23. It is undisputed that Correctional Jesus Facundo worked the 7-3 shift on April 24, 2004 and April 29, 2004. However, Norman Smith did not have any contact with Officer Facundo on April 24, 2004 because Norman did not arrive until after Officer Facundo's shift was over. There has been ample evidence from Plaintiff's own witness that Officer Facundo was an officer that always tried to get help for Norman. Specifically, Carlos Matias testified

that Officer Facundo provided a medical request form when he asked for one. This is consistent with Officer Facundo's testimony, during which he stated that he always provides medical requests and treatment upon request.

24. Additionally, if true, the testimony concerning Facundo demonstrated that he made repeated attempts to get Norman medical attention. This is hardly deliberate indifference to a serious medical need, nor can it be the basis for individual liability. Therefore, based on the evidence, no reasonable jury could find that Correctional Officer Facundo was deliberately to Norman Smith's need.

### Remaining Individual Officers

25. There has been no accurate identification of any correctional officer that acted improperly towards Norman. For example, the evidence demonstrated that Officer Terrence Toomey was on duty on the 3-11 shift on April 29, 2004. However, Plaintiff's only identification from this shift came from George Robotis, who testified that he complained to an African American male correctional officer during the afternoon shift.

26. Other than this inaccurate identification, there has been no identification of any individual defendant. Without more, there is only speculation about who allegedly violated Norman Smith's constitutional rights. Therefore, judgment as a matter of law should be granted in favor of all of individual defendants and against Plaintiff.

WHEREFORE Defendants, SHERIFF OF COOK COUNTY, OFFICER ALEX SANCHEZ, OFFICER DONETTA DAVIS, OFFICER TERRENCE TOOMEY, OFFICER DOUGLAS JOHNSON, OFFICER LOUIS THIEMECKE, OFFICER DARRYL HOUSTON, OFFICER JESUS FACUNDO, PEGGY WESTBOOK and COOK COUNTY, respectfully request that this Court grant their Judgment as a Matter of Law for Plaintiff's policy claims

against the Sheriff of Cook County and Cook County and the claims against the individual Defendants..

> Respectfully submitted,
>
> SHERIFF OF COOK COUNTY, et al. – Defendants.
>
> By: /s/ Daniel F. Gallagher
> One of their attorneys

Daniel F. Gallagher, Esq.
Larry S. Kowalczyk, Esq.
Dominick L. Lanzito, Esq.
QUERREY & HARROW, LTD.
175 West Jackson, Suite 1600
Chicago, Illinois 60604
Phone: 312-540-7000

Document #: 1287209