# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARLITA THOMAS, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 04 C 3563 |
| | ) | |
| v. | ) | Judge Castillo |
| | ) | |
| SHERIFF OF COOK COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## COURT'S JURY INSTRUCTIONS

FILED

DEC 1 3 2007
Dec 13 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments of the attorneys. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact,

even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When you retire to the jury room to deliberate on your verdict, you may take [this charge with you as well as] exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to conduct your deliberations.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from that fact that another fact exists. In law we call this an "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in this case.

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

It is proper for an attorney to interview any witness for the purposes of learning what testimony the witness will give and to prepare for trial.

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;
- the witness's memory;
- any interest, bias or prejudice the witness may have;
- the witness's intelligence;
- the manner of the witness while testifying; and
- the reasonableness of the witness's testimony in light of all the evidence in the case.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

You must consider only the evidence in this case. However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence you may consider. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said [or did] something, [or failed to say or do something] that was different from the testimony he gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or unimportant detail.

Certain testimony will now be presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be read to you today. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

The credibility of a witness may be attacked by introducing evidence that the witness has been convicted of a crime. Evidence of this kind may be considered by you in connection with all the other facts and circumstances in evidence in deciding the weight to be given to the testimony of that witness.

Defendants' timeline and Plaintiff's shift calendar are illustrations. They are the party's description used to describe something involved in this trial. If your recollection of the evidence differs from the exhibits, rely on your recollection.

Plaintiff contends that defendants at one time possessed a CMT Daily Contact Sheet for April 29, 2004, the day before Norman's death, and several written requests for medical attention made by or on behalf of Norman Smith. However, defendants contend that these documents never existed or that the loss of evidence was accidental.

You may assume that such evidence would have been unfavorable to defendants only if you find by a preponderance of the evidence that:

(1)    Defendants intentionally destroyed the evidence or caused the evidence to be destroyed; and

(2)    Defendants destroyed the evidence or caused the evidence to be destroyed in bad faith.

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If there is publicity about this trial, you must ignore it. You must decide this case only from the evidence presented in the trial. Do not read anything or listen to any TV or radio programs about the case.

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

You will recall that during the course of this trial I instructed you that I admitted a demonstrative x-ray for a limited purpose. You may consider such evidence only for the specific limited demonstrative purpose for which it was admitted.

In this case, plaintiff Marlita Thomas, as Administrator of the Estate of Norman Smith, deceased, has asserted claims both under federal law and the statutory law of Illinois. Each of these claims must be considered by you separately.

The plaintiff, Marlita Thomas, (Norman's mother) brings this action in a representative capacity by reason of her being administrator of the estate of Norman Smith, deceased. She represents Amber Smith, Kailah Smith, and Da'Quan Magsby, the children of Norman Smith, and the estate of the deceased Norman Smith. They are the real parties in interest in this lawsuit, and in that sense are the real plaintiffs whose damages you are to determine if you decide for the plaintiff Marlita Thomas.

In this case, the plaintiff must prove every essential part of his claim by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the plaintiff's claim is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the plaintiff's claim by a preponderance of the evidence, you should find for the defendant as to that claim.

The parties have agreed, or stipulated, that Norman Smith died on April 30, 2004. This means that both sides agree that this is a fact. You must therefore treat this fact as having been proved.

**Claim I Denial of Medical Care – Individual Defendants**

To succeed on her federal claim of failure to provide medical attention, Plaintiff must prove each of the following things by a preponderance of the evidence:

1.    Norman Smith had a serious medical need;

2.    The Defendant was deliberately indifferent to Norman Smith's serious medical need; and

3.    The Defendant's conduct caused harm to Norman Smith.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence against one or more of the individual defendants, then you should find for Plaintiff, and go on to consider the question of damages against each of those individuals.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you should find for that Defendant, and you will not consider the question of damages.

When I use the term "serious medical need," I mean a condition that a doctor says requires treatment, or something so obvious that even someone who is not a doctor would recognize it as requiring treatment. In deciding whether a medical need is serious, you should consider the following factors:

— the severity of the condition;

— the harm, including pain and suffering, that could result from a lack of medical care;

— whether providing treatment was feasible; and

— the actual harm caused by the lack of medical care.

When I use the term "deliberately indifferent," I mean that the Defendant actually knew of a substantial risk of serious harm, and that the Defendant consciously disregarded this risk by failing to take reasonable measures to deal with it.

Actual knowledge of a substantial risk of serious harm can be inferred from the obviousness of the risk.

## Count II Policy & Practice Claims

You must consider whether The Cook County Sheriff's Office or the County of Cook is also liable to Plaintiff. On the federal claim, the Cook County Sheriff's Office or the County of Cook is not responsible simply because it employed the Correctional Officers or the Correctional Medical Technicians. The Cook County Sheriff's Office or the County of Cook is liable if Plaintiff proves by a preponderance of the evidence that Defendants' conduct was a result of the Cook County Sheriff's or the County of Cook's policy or practice.

For her policy claim, Plaintiff must prove by a preponderance of the evidence that one or more of the following was a proximate cause of Norman Smith's death:

1. Cook County failed to have a system in place so that the medical requests of the detainees were reviewed promptly by properly trained medical staff and acted upon in a reasonable manner;

2. Cook County or the Cook County Sheriff had a practice of severely under-staffing correctional officers;

3. Cook County had a practice of failing to timely fix broken video monitors in the Cook County Jail;

4. The Cook County Sheriff had a practice of Correctional Officers falsifying their Daily Tier Logs.

To succeed on her claim against Defendant Cook County for failure to train, Plaintiff must prove each of the following things by a preponderance of the evidence:

1. Cook County's training program was not adequate to train its Correctional Medical Technicians (CMT) to properly handle recurring situations;

2. Cook County knew that more or different training was needed to avoid denial of medical care to a serious medical need of a detainee, or that this was obvious to Cook County; and

3. Cook County's failure to provide adequate training was a proximate cause of the death of Norman Smith.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you should find for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you should find for Defendant, and you will not consider the question of damages.

When I use the term, "official policy," I mean:

A custom or practice that is persistent and widespread, so that it is Cook County's or the Cook County Sheriff's standard operating procedure. A persistent and widespread pattern may be a custom even if the County of Cook or Cook County Sheriff has not formally approved it, so long as plaintiff proves that a policy-making official knew of the pattern and allowed it to continue. This includes a situation where a policy-making official must have known about a subordinate's actions/failures to act by virtue of the policy-making official's position.

When I use the expression "proximate cause," I mean any cause which, in natural or probable sequence, produced the injury claimed of.  It need not be the only cause, nor the last or nearest cause.  It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.

It is not a defense to any of plaintiff's policy and practice claims for defendants to assert that inadequate staffing levels are caused by inadequate funding by the county or lack of authority over funds.

As to Plaintiff's federal claims of denial of medical care and her policy and practice claims, if you find in favor of the Plaintiff, then you must determine the amount of money that will fairly compensate Plaintiff for any injury that you find Norman Smith sustained and is reasonably certain to sustain in the future as a direct result of the failure to provide Norman Smith with medical care or any policy and practice failures.

Plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

You should consider the following types of compensatory damages, and no others:

1) The earning capacity that Plaintiff has lost and the present value of the earning capacity that Plaintiff is reasonably certain to lose in the future because of his inability to work;

When I say present value, I mean the sum of money needed now which, together with what that sum may reasonably be expected to earn in the future, will equal the amounts of those monetary losses at the times in the future when they will be sustained.

2) The physical and mental/emotional pain and suffering that Norman Smith experienced. No evidence of the dollar value of physical or mental/emotional pain and suffering has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate the plaintiff for the injury Norman Smith has sustained.

If you find in favor of Plaintiff but find that the plaintiff has failed

to prove damages, you must return a verdict for Plaintiff in the amount of one dollar ($1.00).

As to Plaintiff's State Claims of Wrongful Death, Survival, and Intentional Infliction Of Emotional Distress, against defendants Donetta Davis, Jesus Facundo, Darryl Houston, Douglas Johnson, Alex Sanchez, Louis Thiemecke, Terrence Toomey, and Peggy Westbrook (the "Individual Defendants"), Plaintiff claims that Norman Smith was injured and died and that the individual defendants committed one of more of the following acts of misconduct:

a.      observed Norman Smith's serious symptoms of medical illness and failed to notify medical personnel;

b.      heard complaints from Norman Smith and/or other detainees about Norman Smith's illness and failed to notify medical personnel;

c.      failed to conduct required security checks or medical rounds, thereby creating a substantial risk that Norman Smith could die.

The Plaintiff further claims that one or more of the foregoing was a proximate cause of Norman Smith's death.

The individual defendants deny that they did any of the things claimed by the plaintiff and deny any failures to provide medical treatment and deny that any such failures were a proximate cause of Norman Smith's death.

As to Plaintiff's Wrongful Death Act claim against defendants Donetta Davis, Jesus Facundo, Darryl Houston, Douglas Johnson, Alex Sanchez, Louis Thiemecke, Terrence Toomey, and Peggy Westbrook (the "Individual Defendants"), plaintiff Marlita Thomas, as Independent Administrator of the Estate of Norman Smith, must prove each of the following propositions by a preponderance of the evidence:

First, that one or more of the individual defendants acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these jury instructions and that in so acting, or failing to act, the conduct of the defendant was willful and wanton;

Second, that Norman Smith was injured;

Third, that the willful and wanton conduct of one or more of the individual defendants was a proximate cause of the death of Norman Smith.

If you find from your consideration of all the evidence that each of the propositions required of the plaintiff has been proved, then your verdict should be for the plaintiff as to the Illinois Wrongful Death Act claim.

If, on the other hand, you find from your consideration of all the evidence that any one of the propositions the plaintiff is required to prove has not been proved, then your verdict should be for the defendant.

When I use the expression "willful and wanton conduct" I mean a course of action which shows actual or deliberate intention to harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others.

It was the duty of defendants Donetta Davis, Jesus Facundo, Darryl Houston, Douglas Johnson, Alex Sanchez, Louis Thiemecke, Terrence Toomey, and Peggy Westbrook, before and at the time of the occurrence, to refrain from willful and wanton conduct which would endanger the safety of Norman Smith.

As to plaintiff's Illinois Wrongful Death claim, if you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate the children of the decedent Norman Smith for the pecuniary loss proved by the evidence to have resulted to the children from the death of Norman Smith. "Pecuniary loss" may include loss of money, benefits, goods, services, and society.

Where a decedent leaves children, the law recognizes a presumption that the children have sustained some substantial pecuniary loss by reason of the death. The weight to be given this presumption is for you to decide from the evidence in this case.

In determining pecuniary loss, you may consider what the evidence shows concerning the following:

1. What money, benefits, goods and services the decedent customarily contributed in the past;

2. What money, benefits, goods and services the decedent was likely to have contributed in the future;

3. Decedent's personal expenses and other deductions;

4. His age;

5. His sex;

6. His health;

7. His habits of industry, sobriety, and thrift;

8. His occupational abilities;

9. The relationship that existed between the children and decedent.

When I use the term "society" in these instructions, I mean the mutual benefits that each family member receives from the other's continued existence, including love, affection, care, attention, companionship, comfort, guidance and protection.

If you find for the plaintiff, then in assessing damages you may consider how long Norman Smith's children will be likely to sustain pecuniary losses as a result of Norman Smith's death, considering how long Norman Smith was likely to have lived and how long his children are likely to live.

In calculating the amount of these pecuniary losses consisting of money, benefits, goods or services, you must not simply multiply the life expectancies by the annual losses. Instead, you must determine their present cash value. "Present cash value" means the sum of money needed now which, together with what that sum may reasonably be expected to earn in the future, will equal the amounts of those pecuniary losses at the time in the future when they will be sustained.

Damages for loss of society are not reduced to present cash value.

According to a table of mortality in evidence, the life expectancy of a person aged 32 years is 44 years. This figure is not conclusive. It is the average life expectancy of persons who have reached the age of 32. It may be considered by you in connection with other evidence relating to the probable life expectancy of the plaintiff in this case, including evidence of his occupation, health, habits, and other activities, bearing in mind that some persons live longer and some persons less than the average.

As to Plaintiff's Survival Act claim against defendants Donetta Davis, Jesus Facundo, Darryl Houston, Douglas Johnson, Alex Sanchez, Louis Thiemecke, Terrence Toomey, and Peggy Westbrook (the "Individual Defendants"), plaintiff Marlita Thomas, as Independent Administrator of the Estate of Norman Smith, must prove each of the following propositions by a preponderance of the evidence:

First, that one or more of the individual defendants acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these jury instructions and that in so acting, or failing to act, the conduct of the defendant was willful and wanton;

Second, that Norman Smith was injured and experienced pain and suffering prior to his death;

Third, that the willful and wanton conduct of one or more of the individual defendants was a proximate cause of the injury to Norman Smith.

If you find from your consideration of all the evidence that each of the propositions required of the plaintiff has been proved, then your verdict should be for the plaintiff as to the Illinois Survival Act claim.

If, on the other hand, you find from your consideration of all the evidence that any one of the propositions the plaintiff is required to prove has not been proved, then your verdict should be for that defendant.

As to the State Survival Claim, if you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate the estate for any of the following elements of damages proved by the evidence to have resulted from the wrongful conduct of Donetta Davis, Jesus Facundo, Darryl Houston, Douglas Johnson, Alex Sanchez, Louis Thiemecke, Terrence Toomey, or Peggy Westbrook, taking into consideration the nature, extent and duration of the injury:

The pain and suffering experienced.

The emotional distress experienced.

As to Plaintiff's Claim of Intentional Infliction of Emotional Distress, Plaintiff has the burden of proving each of the following propositions:

First, that one or more of the defendants, Donetta Davis, Jesus Facundo, Darryl Houston, Douglas Johnson, Alex Sanchez, Louis Thiemecke, Terrence Toomey, or Peggy Westbrook, acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions, and that in so acting or failing to act, that defendant's conduct was extreme and outrageous;

Second, that the defendant either intended to inflict severe emotional distress on Norman Smith, or knew that there was a high probability that this conduct would cause severe emotional distress;

Third, that the conduct did in fact cause severe emotional distress. If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff. On the other hand, if you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendants.

As to plaintiff's claim of intentional infliction of emotional distress, if you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate the estate for any of the following elements of damages proved by the evidence to have resulted from the wrongful conduct of Donetta Davis, Jesus Facundo, Darryl Houston, Douglas Johnson, Alex Sanchez, Louis Thiemecke, Terrence Toomey, or Peggy Westbrook, taking into consideration the nature, extent and duration of the injury:

The pain and suffering experienced.

The emotional distress experienced.

You must not award compensatory damages more than once for the same injury. For example, if the plaintiff prevails on two claims and establishes a dollar amount for his injuries, you must not award him any additional compensatory damages on each claim. The plaintiff is only entitled to be made whole once, and may not recover more than he has lost. Of course, if different injuries are attributed to the separate claims, then you must compensate the plaintiff fully for all of his injuries.

You may impose damages on a claim solely upon the defendant or defendants that you find are liable on that claim. Although there are multiple Defendants in this case, it does not necessarily follow that if one is liable, all or any of the others also are liable. Each defendant is entitled to fair, separate and individual consideration of his case without regard to your decision as to the other defendants. If you find that only one defendant is responsible for a particular injury, then you must award damages for that injury only against that defendant.

You may find that more than one defendant is liable for a particular injury. If so, the plaintiff is not required to establish how much of the injury was caused by each particular defendant whom you find liable. Thus, if you conclude that the defendants you find liable acted jointly, then you may treat them jointly for purposes of calculating damages. If you decide that two or more of the defendants are jointly liable on a particular claim, then you may simply determine the overall amount of damages for which they are liable, without determining individual percentages of liability.

If you find that Plaintiff has proved any of her claims against any of the Defendants, then you must determine what amount of damages, if any, Plaintiff is entitled to recover from each defendant, and you will use Verdict Form A.

If you find that Plaintiff has failed to prove any of her claims, then you will not consider the question of damages, and you will use Verdict Form B.

You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case.

When you retire to the jury room to deliberate, you may take with you [this charge and] the exhibits that the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial. After you have reached your unanimous verdict, your Foreperson must fill in your answers to the written questions and sign and date the verdict form. [Return this charge together with your written answers to the questions.] Unless I direct you otherwise, do not reveal your answers until such time as you are discharged. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by meeting with you in the courtroom. I will always first show the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

You may now retire to the jury room to conduct your deliberations.